UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POPPI METAXAS,<br><br>    Plaintiff,<br><br>v.<br><br>GATEWAY BANK F.S.B., et al.,<br><br>    Defendants. | Case No. 20-cv-01184-EMC (DMR)<br><br>**ORDER ON JOINT DISCOVERY LETTER**<br><br>Re: Dkt. No. 60 |

The parties filed a joint discovery letter brief in which Plaintiff Poppi Metaxas moves to supplement the administrative record. [Docket No. 60 (Jt. Letter).] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion is denied.

## I.  BACKGROUND

This is an action for supplemental retirement benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a). Metaxas filed this case against her former employer Defendant Gateway Bank, F.S.B. ("Gateway") and the Gateway Bank Supplemental Executive Retirement Plan ("the Plan"). She alleges that she worked as the President and CEO of Gateway Bank and that she became "totally disabled under the terms of the plan" due to "prolonged sickness" and other "acute and chronic medical problems." Compl. ¶¶ 7-10. She filed a claim for disability and termination benefits on March 23, 2013, which Defendants denied on February 25, 2016. *Id.* Metaxas appealed the denial on August 15, 2016, and "sent defendants additional documentation of her disability" with her appeal. Defendants upheld the decision to deny benefits on May 22, 2017. *Id.* at ¶¶ 12, 13. Metaxas filed the complaint on February 17, 2020 seeking relief under ERISA §§ 502(a)(1)(B), (a)(3). *See* 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3).

Metaxas filed a motion to supplement the administrative record, which was referred to the

1  undersigned. [Docket Nos. 38, 44.] Because the motion implicated the appropriate standard of
2  review of the underlying determination, the Honorable Edward M. Chen ordered the parties to
3  brief the issue and subsequently held that "Defendants' decision to deny benefits to Plaintiff . . . is
4  reviewed for abuse of discretion." [Docket No. 58.] The undersigned then ordered the parties to
5  meet and confer regarding Metaxas's request to supplement the administrative record and to file a
6  joint letter on any remaining disputes. [Docket No. 59.] The parties filed the instant joint letter in
7  which Metaxas moves to supplement the administrative record with four categories of documents.
8  Exhibit 1 to the joint letter comprises a table of contents and the 215 pages of documents Metaxas
9  seeks to add to the administrative record. [Docket No. 60-1 (Supp. A.R.).]

## II.   LEGAL STANDARD

ERISA allows a participant in an employee benefit scheme to bring a civil action to recover benefits due under the terms of a plan. 29 U.S.C. § 1132(a)(1)(B). As previously noted, Judge Chen determined that he must apply the abuse of discretion standard in this case, which means that the court's review is limited to the record before the plan administrator. *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1110 (9th Cir. 2003) (citation omitted). "In the ERISA context, the 'administrative record' consists of 'the papers the insurer had when it denied the claim.'" *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 632 n.4 (9th Cir. 2009) (quoting *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1086 (9th Cir. 1999)).

Courts have determined that ERISA and its regulations determine the scope of the administrative record. *See Nguyen v. Sun Life Assurance Co. of Canada*, No. 3:14-cv-05295 JST (LB), 2015 WL 6459689, at *3-4 (N.D. Cal. Oct. 27, 2015). Under ERISA, "every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2); *see also* 29 C.F.R. § 2650.503(h)(1) ("a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan"). ERISA regulations state that claimants must be provided access to "all documents, records, and other information relevant to the claimant's claim for benefits," and

2

"[w]hether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section . . . ." *See* 29 C.F.R. § 2650.503-1(h)(2)(iii). In turn, 29 C.F.R. § 2650-503-1(m)(8) provides that "[a] document, record, or other information shall be considered 'relevant' to a" claim if it:

> (i) Was relied upon in making the benefit determination;
>
> (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
>
> (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or
>
> (iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

29 C.F.R. § 2650.503-1(m)(8). Materials that fall into one of the foregoing categories should be considered "part of the administrative record." *Nguyen*, 2015 WL 6459689, at *3-4.

In addition, 29 U.S.C. § 1024(b)(4) mandates that upon request, plan administrators must provide participants with certain foundational plan documents:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary[ ] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. . . .

29 U.S.C. § 1024(b)(4). The Ninth Circuit narrowly construes the disclosures required by this section; it has interpreted "other instruments under which the plan is established or operated" to mean "documents that are similar in nature to the documents specifically listed" in section 1024(b)(4). *Hughes Salaried Retirees Action Comm. v. Adm'r of Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686, 691 (9th Cir. 1995). Therefore, section 1024(b)(4) requires a plan administrator to give participants "documents that provide individual participants with information about the plan and benefits." *See id.* at 690; *see also Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 84 (1995) (noting that section 1024(b)(4) requires plan administrators to furnish "copies

of governing plan documents" to beneficiaries upon request).

The Ninth Circuit reinforced its narrow interpretation of section 1024(b)(4) in *Shaver v. Operating Engineers Local 428 Pension Trust Fund*, 332 F.3d 1198, 1201-02 (9th Cir. 2003) (applying the interpretive principle of *ejusdem generis* to the term "other instruments," noting that the statute "mentions only legal documents that describe the terms of the plan, its financial status, and other documents that restrict or govern the plan's operation"). Quoting *Hughes*, *Shaver* held that "'[other] instruments' refers to '. . . documents that provide individual participants with information about the plan and benefits.'" 332 F.3d at 1202 (quoting *Hughes*, 72 F.3d at 690). *Shaver* concluded that the statute did not mandate the disclosure of itemized expenditure lists, which at most related "only to the manner in which the plan is operated." *Id*.

## III.   DISCUSSION

Metaxas argues that the administrative record is incomplete. She moves to augment it with four categories of records.

### A.   Category 1

Metaxas states that Category 1 consists of "plan instruments" which include the following documents:[1]

- New York Life Insurance Policy No. 56 403 405 and a New York Life Quarterly Policy Summary, Supp. A.R. 700-779;
- Metaxas's December 31, 2004 W-2 statement, Supp. A.R. 780-781;
- Excerpts of Gateway Bank's audited financial statements from 2007-2009, Supp. A.R. 782-790;
- Audited financial statements for Gateway dated June 30, 2011 and 2010, Supp. A.R. 795-833;
- Gateway's Proxy Statement for an October 26, 2011 stockholders meeting, Supp. A.R. 834-836;

---

[1] Where the names and/or descriptions of the documents are not clear from the documents themselves, the court uses the names and/or descriptions from the table of contents in Exhibit 1.

- Consent Order by Department of the Treasury, Comptroller of the Currency regarding Gateway, dated October 26, 2011, Supp. A.R. 837-863;
- Annual Gateway shareholder meeting minutes dated November 14, 2012, Supp. A.R. 864-873;
- Excerpts from Gateway's business meeting dated October 22, 2013, Supp. A.R. 865-873;
- Gateway's Proxy Statement for a November 18, 2014 stockholders meeting, Supp. A.R. 874-880;
- May 15, 2017 letter from Bill J. Metaxas, attorney for Plaintiff Metaxas, to Gateway's Board of Directors, Supp. A.R. 881-886; and
- Notice of Annual Meeting of Stockholders set for May 25, 2017 and agenda for same, Supp. A.R. 887-896.[2]

Metaxas argues that these documents must be included in the administrative record under section 1024(b)(4), because they are "plan instruments" under which the Plan is "established or operated." Jt. Letter 1. Defendants respond that these documents do not fall within the scope of section 1024(b)(4) disclosures. *See* Jt. Letter 2.

As previously stated, the Ninth Circuit has narrowly construed section 1024(b)(4)'s disclosure requirements. *Hughes*, 72 F.3d at 691; *Shaver,* 332 F.3d at 1201-02. Although *Hughes* and *Shaver* addressed the scope of section 1024(b)(4) disclosures in the context of alleged violations of that section itself, it is logical to apply their holdings to determine whether Metaxas's Category 1 documents fall within the statutory disclosure requirements and thus should be part of the administrative record.

Metaxas does not contend that any Category 1 document is "the latest updated summary[ ] plan description, . . . the latest annual report, any terminal report, the bargaining agreement, [or] trust agreement" or is similar in nature to those documents. *See* 29 U.S.C. § 1024(b)(4); *Hughes*,

---

[2] The table of contents also lists "March, April May & June account statements—Metaxas," Supp. A.R. 791-94, but these documents are not included in Exhibit 1.

5

72 F.3d at 691. Therefore, in order to fall within the definition of "contract, or other instruments under which the plan is established or operated," Metaxas must show that each Category 1 document "provides individual participants with information about the plan and benefits." *Id*. at 690.

Metaxas does not explain the significance of these documents, and her argument is garbled. According to Metaxas, these documents "show, at least in part, how the [Plan] was operated, established and funded." Jt. Letter 2.[3] She first addresses the New York Life insurance policy documents, her 2004 W-2 statement, and her account statements (which, as previously noted, she failed to include in Exhibit 1) (SUPP A.R. 700-94). *Id*. at 1-2. According to Metaxas, the Plan provides that Gateway "informally funds the liability of the SERP through life insurance purchased on the lives of the SERP participants," citing SUPP A.R. 783 and Section 10.1 of the plan. Jt. Letter 1. However, according to the table of contents, SUPP A.R. 783 contains "excerpts from [Gateway's] audited financial statements as of June 30, 2009, 2008 and 2007." The financial statements do not "provide individual participants with information about the plan and benefits" and thus do not fall under section 1024(b)(4). *See Hughes*, 72 F.3d at 691.[4]

Metaxas goes on to state that "[t]he New York Life insurance policy itself and policy summaries, one of plaintiff's W-2 forms, and her Gateway Bank account statements show the amount of yearly premiums ($280,449.51) and how they were paid via plaintiff's deferred compensation, as well as beneficiary information, the policy's initial cash value and premium payment, and the terms upon which the policy accrued value." Jt. Letter 1-2. As with the financial statements, these documents say nothing about how the Gateway plan "is established or operated," and Metaxas does not point to anything in the documents that "provide[s] individual

---

[3] Defendants dispute that the documents relate to plan funding, arguing that the plan did not permit her to defer compensation through distributions and that Metaxas participated in other benefit plans, including a deferred compensation plan. Jt. Letter 2.

[4] Moreover, even though the cited portion of the financial statements states that Gateway "informally funds the liability of the SERP through life insurance purchased on the lives of the SERP participants," (SUPP A.R. 783) this is contradicted by the Plan itself, which provides that "[t]his Plan is intended to be an *unfunded* plan maintained primarily to provide deferred compensation benefits . . ." [Docket No. 41-2 at ECF p. 30 (CLMREC 00029) (emphasis added).] The Plan makes no mention of funding via life insurance plans.

participants with information about the plan and benefits." Accordingly, Metaxas has failed to show that the life insurance policy, her W-2 forms, and her account statements fall within the definition of "contract, or other instruments under which the plan is established or operated."

The remaining documents in Category 1 consist of "various excerpts from the bank's financial statements, ledgers, Board meeting minutes, agendas and proxy statements between the time the [Gateway plan] was created in early 2005 through the time [Metaxas's] administrative appeal was denied in 2017…" Jt. Letter 2. Metaxas states that these documents "relate to . . . the [Plan's] funding and accounting methodology, and the amount of bank stock some [Plan] Committee members held at around the time of the claims decisions," as well as "questions raised about the Bank's accounting for its potential [Plan] liability to" her. *Id*. As with the prior group of documents, Metaxas fails to show that these materials "provide participants with information about the plan and benefits" or that the documents are instruments "under which the [Plan] is established or operated."

Finally, Metaxas makes a conclusory statement that the documents in Category 1 satisfy the definition of relevance set forth in 29 C.F.R. § 2560.503-l(m)(8).[5] Jt. Letter 2. She does not map the documents to the categories of information set forth in that regulation, and it does not appear to the court that they fall within any of them.

In sum, Metaxas has failed to show that the Category 1 documents are "plan instruments" within the scope of section 1024(b)(4) or that they satisfy the relevance standards in 29 C.F.R. § 2560.503-l(m)(8). Accordingly, her motion to supplement the administrative record to include these documents is denied.

**B.     Category 2**

Category 2 consists of documents that Metaxas contends are related to the characterization of her separation from Gateway (SUPP A.R. 897-910).

There are four documents in this category: Gateway's Board of Director's Meeting

---

[5] Metaxas also states the documents in categories 1 and 2 fall within "the definition of relevance set forth in Federal Rule of Evidence 401." Jt. Letter 2, 4. She offers no authority that Rule 401 applies to requests to supplement an administrative record in an ERISA denial of benefits case.

1    Minutes of April 29, 2010 and May 27, 2010; an April 1, 2010 suspension notice Gateway issued
2    to another employee, Michael Kenny; and a January 11, 2010 letter regarding Kenny. Jt. Letter 3-
3    4; Ex. 1 at ECF pp. 197-210. According to Metaxas, the April 29, 2010 minutes "are significant in
4    that they make no mention of [her] being suspended or terminated," and the May 27, 2010 minutes
5    reference her resignation from Gateway and the Board of Directors' acceptance of the same. Jt.
6    Letter 4; Ex. 1 at ECF pp. 201-210. Metaxas contends that the statement about her resignation "is
7    contrary to [the Board's] claim she was terminated for cause two months earlier." Jt. Letter 4.
8    She also argues that the May 27, 2010 minutes refer to the Board's "formal ratification of the
9    suspension of Michael Kinney [sic] whereas there is no mention in the record of a Board
10   ratification of [Metaxas's] alleged termination." *Id*. Metaxas argues that whether she resigned
11   from her employment, was suspended without pay, or was terminated for cause "is one of the key
12   issues in this case." She does not explain the significance of the characterization of her separation.
13   Jt. Letter 3.
14     Metaxas contends that the Category 2 documents "fall within the definition of relevance
15   under" 29 C.F.R. § 2560.503-1, as well as Federal Rule of Evidence 401." *Id*. Her conclusory
16   argument lacks merit. Each of these documents predates her March 25, 2013 claim for benefits,
17   and Metaxas cites no evidence that they were submitted, considered, or generated in the course of
18   the benefit decision at issue in this case.
19     As Metaxas has failed to show that the documents in Category 2 satisfy the relevance
20   standard in 29 C.F.R. § 2560.503-l(m)(8), the motion to supplement the administrative record to
21   include these documents is denied.
22     **C. Category 3**
23     Category 3 consists of two documents from Metaxas's Unum disability claim records
24   (SUPP A.R. 911-916). Jt. Letter 4. The first is her Unum Provident "income protection claim"
25   form dated November 5, 2010. SUPP A.R. 911. The form states that her "date last worked" was
26   March 23, 2010. Jt. Letter 5; SUPP A.R. 911. The second document is an October 6, 2010 letter
27   from Metaxas requesting assistance from Gateway with completing forms for the Unum claim. Jt.
28   Letter 5; SUPP A.R. 912-16.

United States District Court
Northern District of California

Metaxas states "[b]oth documents meet the definition of relevance under" 29 C.F.R. § 2560.503-l(m)(8) but once again she does not explain her argument. Jt. Letter 5. These documents pre-date her March 23, 2013 claim for benefits under the Gateway Plan and there is no indication that they were relied upon in making the benefit determination or were submitted, considered, or generated in the course of that decision.

Additionally, Metaxas states she "requested these documents, they were not produced, and she incorporated them by reference in her August 15, 2016, appeal letter," citing CLMREC 6 (Docket No. 41-2 at ECF p. 7). Jt. Letter 5. CLMREC 00006 is part of a ten-page letter from Metaxas's former counsel on August 15, 2016 appealing the initial denial of her claim. [*See* Docket No. 41-2 at ECF pp. 4-13, CLMREC 00003-12.] In relevant part, counsel wrote, "[a]lthough Gateway Bank submitted forms relating to Ms. Metaxas's claim for SDI benefits and Unum LTD benefits . . . these documents were not included in the documents Gateway produced in response to Ms. Metaxas's request for a copy of her claim file and her personnel file. Ms. Metaxas hereby incorporates by reference as part of the administrative record all documents in the Bank's possession relating to her SDI and LTD claims." [Docket No. 41-2 at ECF pp. 7-8, CLMREC 00006-7.] In response, Defendants state that these documents were in Metaxas's possession when she submitted her initial claim and appeal but that she "chose not to present them in support of her claim." Jt. Letter 5. Metaxas does not respond to this and offers no authority that her attorney's purported incorporation by reference is sufficient to establish that these documents should be added to the administrative record. Accordingly, Metaxas's motion to supplement the administrative record with the Category 3 documents is denied.

### D.     Category 4

Category 4 consists of a June 2, 2017 letter from Metaxas's former counsel to Defendants' counsel "request[ing] correction of the Minutes" of the Gateway Plan Appeals Committee's March 23, 2017 administrative hearing. SUPP A.R. 922. Metaxas states that her former counsel was not given an opportunity to review the minutes before they were adopted and that "[t]his letter is his attempt to correct what he perceived as inaccuracies therein and preserve them for the record." Jt. Letter 5. She asserts that the record should be supplemented with this document under 29 C.F.R. §

9

1   2560.503-l(m)(8) and "as a matter of procedural due process"

2    This document post-dates the May 22, 2017 decision upholding the denial of benefits. It

3   was not relied upon in making the benefit determination and was not submitted, considered, or

4   generated in the course of making the benefit determination. Therefore, it does not satisfy the

5   relevance standard in 29 C.F.R. § 2560.503-l(m)(8). As to Metaxas's procedural due process

6   argument, she does not explain it or offer any authority supporting her position. Accordingly, the

7   motion to supplement the administrative record with the June 2, 2017 letter is denied.

## III. CONCLUSION

For the foregoing reasons, Metaxas's motion to supplement the administrative record is denied.

**IT IS SO ORDERED.**

Dated: March 31, 2022



Judge Donna M. Ryu
United States Magistrate Judge

10