1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

POPPI METAXAS,

            Plaintiff,

    v.

GATEWAY BANK F.S.B., et al.,

            Defendants.

Case No. 20-cv-01184-EMC

**ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**

Docket No. 96

Plaintiff Poppi Metaxas filed this case against her former employer Defendant Gateway Bank, F.S.B. ("Gateway"). Docket No. 1 ("Compl."). The parties filed cross motions for summary judgment. Docket No. 74, 77. The Court found in favor of Plaintiff on the claim for termination benefits and in favor of Defendants on the claim for disability benefits. Docket No. 90 ("SJ Order"). Ms. Metaxas now moves for attorney's fees totaling $316,880 pursuant to 29 U.S.C. § 1132 (g). Docket No. 96 ("MAF"); Docket No. 100 ("Repl.").

For the following reasons, the Court **GRANTS** Ms. Metaxas' Motion for Attorney's Fees in the amount of $189,240 in attorney's fees (236.55 hours at $800 per hour) and $400 in costs for a total of $189,640.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

A.    Factual Background

Since 1998, Ms. Metaxas was employed as President and CEO of Gateway as an at-will employee serving at the pleasure of the Board. SJ Order, at 4. She was the only participant in Gateway's Supplemental Executive Retirement Plan ("the Plan"), which provides retirement, disability, or termination benefits subject to the terms and conditions of the Plan. *Id.* at 2. The

United States District Court
Northern District of California

1   Plan is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001.

2   *Id.* at 1.

3          In 2008, Ms. Metaxas was diagnosed with ovarian cancer and underwent chemotherapy

4   treatment. *Id.* at 5–6.  She continued to report symptoms through 2011. *Id.* at 6–9.

5          In 2010, the Office of Thrift Supervision ("OTS") determined that Ms. Metaxas had

6   engaged in fraudulent transactions on behalf of Gateway in 2009. *Id.* at 4.  The Board suspended

7   Ms. Metaxas without pay pending further investigation of the matter. *Id.* at 4–5.  Ms. Metaxas

8   was charged with conspiracy to commit bank fraud in the Eastern District of New York. *Id.* at 10.

9   She pled guilty in 2015. *Id.*

10         While the charges were pending, Ms. Metaxas submitted a claim for benefits under the

11  Plan. *Id.* at 11.  Gateway's Initial Claim Committee considered and denied Ms. Metaxas' claim.

12  *Id.*  Upon reconsideration, the Appeal Committee found that Ms. Metaxas was ineligible for any

13  termination benefits because she was terminated for cause before she tendered her resignation. *Id.*

14  at 12.  The committee also found that Ms. Metaxas was not entitled to disability benefits because

15  she did not become disabled while employed by Gateway. *Id.* at 13.

16  B.     Procedural History

17         Ms. Metaxas filed her complaint on February 17, 2020.  Docket No. 1 ("Compl.").  The

18  parties filed cross-motions for summary judgment.  Docket No. 74, 77.  The Court found in favor

19  of Ms. Metaxas on the claim for termination benefits and in favor of Gateway on the claim for

20  disability benefits.  Docket No. 90 ("SJ Order").

21         Ms. Metaxas now moves for $310,505 in attorney's fees pursuant to 29 U.S.C. § 1132(g).

22  Docket No. 96 ("MAF").  Gateway opposes.  Docket No. 99 ("Opp.").  Ms. Metaxas replied,

23  increasing the request to $316,880 for time spent on the reply brief itself.  Docket No. 100

24  ("Repl.").  The Court now addresses this motion.

25                          **II.     LEGAL STANDARD**

26  A.     Motion for Attorney's Fees (29 U.S.C. § 1132 (g))

27         For ERISA actions, "the court in its discretion may allow a reasonable attorney's fee and

28  costs of action to either party."  29 U.S.C. § 1132(g)(1); *Hummell v. S.E. Rykoff & Co.*, 634 F.2d

1    446, 452 (9th Cir. 1980).  The Supreme Court has determined that there is no requirement that fees

2    may only be awarded to a "prevailing party" so long as the claimant has achieved "some degree of

3    success on the merits."  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 244–45 (2010).

4    The Ninth Circuit has directed courts to consider the following factors when considering whether

5    to grant ERISA fee awards: (1) the degree of the opposing parties' culpability or bad faith; (2) the

6    ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the

7    opposing parties would deter others from acting under similar circumstances; (4) whether the

8    parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to

9    resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties'

10   positions.  *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1121–22 (9th Cir.

11   2010) (citing *Hummell*, 634 F.2d at 446).

## III.   <u>DISCUSSION</u>

A.   <u>Eligibility for Attorney's Fees</u>

14          As a preliminary matter, Ms. Metaxas is eligible for attorney's fees under § 1132(g).

15   Attorney's fees may be awarded to any party that has achieved "some degree of success on the

16   merits."  *Hardt*, 560 U.S. at 244–45.  "Although the Supreme Court did not address the issue in

17   *Hardt*, most courts have, in the wake of *Hardt* determined that a remand to a plan administrator—

18   by itself—does in fact constitute some success on the merits."  *Bain v. Oxford Health Ins. Inc.*,

19   No. 15-CV-03305-EMC, 2020 WL 1332080, at *2 (N.D. Cal. Mar. 23, 2020).  Here, the Court

20   granted-in-part summary judgment in favor of Ms. Metaxas.  SJ Order, at 40.  On the issue of

21   termination benefits, the Court "remand[ed] to the [Plan] administrator for reconsideration"

22   because the Court found that the administrator abused its discretion in interpreting a provision of

23   the Plan and erred procedurally.  *Id.* at 28.  Thus, Ms. Metaxas has achieved some success on the

24   merits and is entitled to make a claim under § 1132(g).

B.   <u>Appropriateness of Attorney's Fees</u>

26          Having concluded that Ms. Metaxas is eligible under § 1132(g), the Court next considers

27   whether an award of fees is appropriate here under the *Hummel* factors before determining the

28   proper amount of fees.  *Hummell*, 634 F.2d at 446.

United States District Court
Northern District of California

1  *1. Degree of the opposing parties' culpability or bad faith.* As to the first factor, this Court

2  finds that the factor weighs in favor of Ms. Metaxas. Ms. Metaxas argues that Gateway's denial

3  of her termination benefits under the terms of the Plan was improper and an abuse of discretion,

4  permitting Gateway to keep the value of Ms. Metaxas' benefits (allegedly $1.2 million) for over

5  12 years. MAF, at 5–6. Ms. Metaxas argues that this constitutes culpability and bad faith. MAF,

6  at 6.

7      An employer is "culpable" when it has "violated ERISA, thereby depriving plaintiffs of

8  rights under a pension plan and violating a Congressional mandate" including but not limited to

9  whether the employer "failed to engage in a fair and open-minded consideration" of a plaintiff's

10  claim. *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 450–51 (2d Cir. 2006). Although

11  Ms. Metaxas' conduct in committing fraud in her capacity as President and CEO of Gateway and

12  their effectuating a resignation before she was terminated hardly puts her on good equitable stead,

13  the fact remains that this Court found that Gateway violated ERISA and abused its discretion in

14  determining whether Ms. Metaxas was entitled to benefits under the Plan. *See* SJ Order.

15  Gateway's Initial Claim Committee violated its discretionary authority in interpreting provisions

16  of the Plan and in concluding that Ms. Metaxas was ineligible for termination benefits. *Id.* at 23.

17  Gateway's Appeal Committee also abused its discretion in failing to adhere to ERISA's

18  implementing regulations ensuring that Ms. Metaxas receive a full and fair review and in relying

19  on cursory reasoning in dismissing pertinent record evidence. *Id.* at 23–26. Gateway contends

20  that the benefit determination was complex, so its actions should not constitute evidence of bad

21  faith. Opp. at 7. But this Court may find that Gateway was culpable without finding that its

22  actions rose to the level of bad faith. *See Paese*, 449 F.3d at 450 (holding that "'culpability' and

23  'bad faith' are distinct standards"). Thus, factor one favors Ms. Metaxas.

24      *2. Ability of the opposing parties to satisfy an award of fees.* As to the second factor, this

25  Court finds that this factor favors Ms. Metaxas because Gateway has the ability to satisfy the

26  award. Ms. Metaxas asserts that as of 2022, Gateway's total equity capital is $14,612,000. MAF,

27  at 6. Gateway concedes this point. Opp. at 7–8.

28      *3. Whether an award of fees against the opposing parties would deter others from acting*

4

*under similar circumstances.*  As to the third factor, this Court finds that this factor is neutral.  Ms. Metaxas argues that an award of attorney's fees would deter Gateway from abuses in discretion and motivate them to comply with ERISA mandates.  MAF, at 6–7.  Gateway argues that the unique facts of this case—where Ms. Metaxas "was criminally indicted for bank fraud against Defendants, admitted her guilt, and served a prison sentence"—are unlikely to arise frequently and that Ms. Metaxas is the only beneficiary under the Plan.  Opp. at 8.

To be sure, it is not accurate that there would be no deterrence because the Plan only covers Ms. Metaxas.  *Thomas v. Bostwick*, No. 13-cv-02544-JCS, 2015 WL 1884071, at *4 (N.D. Cal. Apr. 21, 2015) (rejecting the "contention that courts should focus narrowly on deterring the specific defendant in a case").  There could exist other similarly situated employers with similar plans who would be deterred from similar abuses of discretion of plain interpretation and enforcement.  *Id.* ("As in virtually any ERISA case, an award of fees here would have some deterrent effect on similarly situated fiduciaries.").  On the other hand, the issues and context here are largely fact specific.  *See Thomas*, at *4 ("The circumstances of this case tend to reduce the significance of deterrence because they are unlikely to arise frequently—in other words, there will probably not be all that many similarly situated *fiduciaries* in need of deterrence." (emphasis added)).  Factor three is largely neutral.

*4. Whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA.*  As to the fourth factor, the Court finds in favor of Gateway.  Gateway argues that Ms. Metaxas did not seek to benefit any other participants of the ERISA plan besides herself, nor did she seek to resolve a significant legal question regarding ERISA.  Opp. at 8.  Ms. Metaxas concedes as much.  MAF, at 7.  Although in some cases a plaintiff may be credited for providing a benefit to others by "strengthen[ing] the entitlement to benefits for employees covered by such policies," even though she "pursued this litigation to secure disability benefits for herself," those cases are distinct in that the plaintiff has also "achieved resolution . . . of a significant ERISA legal question."  *Gross v. Sun Life Assur. Co. of Canada*, 763 F.3d 73, 85 (1st Cir. 2014).  No such significant ERISA legal question was resolved here.  Factor four favors Gateway.

United States District Court
Northern District of California

1

2

3

4

5

6

     *5. Relative merits of the parties' positions.*  As to the fifth factor, this Court finds that the factor weighs in favor of Ms. Metaxas.  Ms. Metaxas argues that its position is clearly meritorious because the Court found an abuse of discretion and remanded in favor of Ms. Metaxas.  MAF, at 7.  Gateway argues that Ms. Metaxas' position is not as strong as it portrays because the Court only remanded rather than directly determining that Ms. Metaxas is eligible for such benefits.  Opp. at 8.

7

8

9

10

11

12

13

14

15

16

17

     Ms. Metaxas is correct that the Court should not view the remand decision as a lack of success.  Repl. at 4.  As explained previously, a remand order constitutes at least "some success on the merits."  *See supra*, Discussion § A; *see also Gross v. Sun Life Assur. Co. of Canada*, 763 F.3d 73, 78–79 (1st Cir. 2014) ("Indeed, a remand for a second look at the merits of her benefits application is often the best outcome that a claimant can reasonably hope to achieve from the courts.  To classify such success as a minimal or 'purely procedural victory' mistakes its importance.").  Moreover, this Court found that Gateway's Initial Claim Committee and Appeal Committee abused their discretion in deviating from ERISA's implementing regulations.  SJ Order at 23–26.  In light of this Court's previous findings, it cannot be said that Gateway's position on the issue of termination benefits is stronger than that of Ms. Metaxas.  Factor five favors Ms. Metaxas.

18

19

20

     Considering the *Hummel* factors altogether, three factors weigh in favor of Ms. Metaxas, one weighs favor of Gateway, and one is neutral.  An award of attorney's fees is appropriate under § 1132(g)(1).

21

C.    <u>Amount of Attorney's Fees</u>

22

23

24

25

26

27

28

     Having found that Ms. Metaxas is eligible for attorney's fees and fees would be appropriate in this case, the Court now considers the amount of fees to award.  *See Heat & Frost Insulators of N. California Loc. Union No. 16 Health & Welfare Tr. Fund v. Rhodium Integrated Servs.*, No. 21-CV-04084-RS, 2022 WL 228304, at *2 (N.D. Cal. Jan. 26, 2022) ("After the court determines that there are no special circumstances that warrant the denial of attorneys' fees, it must assess whether the requested fees are reasonable by calculating the "lodestar.").  The Court may use the "lodestar" method to determine a reasonable fee award.  *McCown v. City of Fontana*,

565 F.3d 1097, 1102 (9th Cir. 2009).  The lodestar is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'"  *McCown*, 565 F.3d at 1102 (internal citations omitted).

Ms. Metaxas' counsel claims $310,505 for 365.3 hours in attorney's fees, prejudgment interest at 10% per annum, and an award of the $400 filing fee.  MAF, at 7–8.  Ms. Metaxas' counsel increases his request by an additional 7.5 hours for time spent on the reply brief to $316,880.  Repl., at 12.

1.   Rate

The billed rate of $850 per hour should be reduced to $800 per hour.  In determining a reasonable rate, the Court should consider "the prevailing market rate in the relevant community."  *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  Here, Ms. Metaxas' attorney Scott Kalkin provides examples of rate determinations from other ERISA benefits denial cases he worked on, including the following:

- $375.00 per hour in *Thivierge v. Hartford Insurance, et al.*, No. 05-cv-0163 (N.D. Cal. 2006) (Judge Wilken).  ¶ 12.

- $425.00 per hour in *Blankenship v. Liberty Life Insurance, et al.*, 486 F.3d 620 (9th Cir. 2007).  ¶ 13.

- $475.00 per hour in *Ondersma v. Metropolitan Life Insurance Co.*, No. 06-cv-0258 (N.D. Cal. 2008) (Judge Chesney).  ¶ 14.

- $650.00 per hour in *Bosley v. Metropolitan Life Insurance Co.*, 16-cv-0139 (N.D. Cal. 2017) (Judge Alsup).  ¶ 15.

Docket No. 97 ("Kalkin Decl.").  Although Gateway urges the Court to be "skeptical" about the value of the attorney's own declarations, this Court may consider affidavits from the plaintiff's attorney.  *See United Steelworkers*, 896 F.2d at 407.  Five years ago, Mr. Kalkin was awarded $650 per hour for his work in a similar ERISA case.  Considering the trajectory of the rate

7

increases over the last few years, Mr. Kalkin's awarded rates increased by $50 per year when he first began his practice of ERISA benefits denial cases (from 2006 to 2007, from 2007 to 2008) but slowed to an increase of approximately $20 per year (from 2008 to 2017). This year, it would be reasonable to award $750 per hour (2017 to 2022). It is also reasonable that "inflation and the cost of doing business . . . warrants the moderate increase in Plaintiff's counsel's hourly rate sought here" of $850 per hour. Repl., at 6. Mr. Kalkin also states that his "current billing rates for ERISA related work range between $375.00 and $800.00 per hour depending upon, among other factors, the complexity of the matter and the parties involved." Kalkin Decl. ¶ 10. This Court should not award a rate higher than the rate Mr. Kalkin himself typically charges. *See Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006) ("That a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his client are part of the market."). A rate of $800 per hour is supported by other recent rate determinations for ERISA cases in this court. Kalkin Decl. ¶ 22 (awarding $750 and $800 per hour). Thus, the Court awards Mr. Kalkin a rate of $800 per hour.

  2. <u>Hours</u>

   The 372.8 billed hours (365.3 hours plus 7.5 hours) should be reduced. When "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount . . . even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 436. The attorney "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended." *Id.* at 437. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37. Gateway contends that nearly half of that time was "excessive, redundant, or otherwise unnecessary." Regarding the disputed categories of tasks, the Court should reduce the number of hours as follows:

///

///

///

| Time Requested | Time Awarded | Task |
|---|---|---|
| 25.8 hours | 12.9 hours | <ul><li>Ms. Metaxas' RICO litigation</li><li>Ms. Metaxas' criminal conviction</li><li>Ms. Metaxas' attempted appeal in state court</li></ul> |
| 20 hours | 0 hours | <ul><li>De novo standard of review</li></ul> |
| 83 hours | 0 hours | <ul><li>Supplement administrative record</li></ul> |
| 11.7 hours | 11.7 hours | <ul><li>Unfiled discovery dispute</li></ul> |
| 40.7 hours | 20.35 hours | <ul><li>Briefing disability benefits</li><li>Briefing equitable relief</li></ul> |
| 181.2 hours | 44.95 hours | Total |

Opp. 17–23.

Regarding the 25.8 hours spent on reviewing the criminal matters that served as context for this suit, the number of hours should be reduced by 50%. While Ms. Metaxas is correct that it is necessary for her counsel "to be familiar with facts and admissions that occurred in the criminal case, as well as the San Mateo civil action," she does not meet her burden of showing entitlement to the award beyond the general statement that "rulings in the RICO could very likely have impacted numerous issues in the ERISA case." Repl., at 9. Without any specific examples justifying the connection between the criminal matter and the current civil matter, 25.8 hours to review the other case dockets and converse with Ms. Metaxas' other counsel is excessive.

Regarding the 20 hours billed for briefing an argument for a new standard of review, the Court should not award any time. Parties can recover attorney's fees for the unsuccessful stages of litigation if those stages contributed to the ultimate victory of the lawsuit. *See Cabrales v. Cty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991). While Ms. Metaxas asserts that its unsuccessful argument was credible because there is a circuit split on the issue, there is no indication that the unsuccessful argument for the new standard of review contributed to her ultimate success on the termination benefits claim. The Court should not award 20 hours for an unsuccessful argument that did not contribute at all to Ms. Metaxas' success on the termination benefits claim.

Regarding the 83 hours billed for augmenting the administrative record and briefing an unsuccessful motion to supplement the administrative record, the Court should not award any

1    time.  "Put simply, ERISA does not allow for attorneys' fees for the administrative phase of the

2    claims process."  *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 987 (9th Cir. 2001)

3    (cleaned up).  Furthermore, the time spent supplementing the record, including "re-titl[ing] and re-

4    number[ing] additions to admin record," "review[ing] and recategoriz[ing] documents to add to

5    administrative record," and "search[ing] portions of [the] electronic file for Kaiser medical

6    records," is unnecessary because that work could have been delegated to other non-attorneys.  *See,*

7    *e.g.*, *Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1193 (S.D. Cal. 2003) (reducing

8    award for work that could have been delegated to a paralegal or secretary, such as "creating files,

9    reorganizing files, preparing tables of contents and tables of authorities, and preparing indexes").

10   The time spent on "continued work on motion to supplement administrative record" and

11   "telephone conversation with Poppi Metaxas re:" without specifying any subject matter is vague

12   and do not support the hours claimed.  *Id.* at 1195 (reducing award for vague billing entries for

13   "continued work on case" and "research of issues").  Ms. Metaxas also fails to explain why the

14   new documents that she sought to add to the administrative record were necessary for the

15   successful resolution of the termination benefits claim.  Repl., at 10–11.  Indeed, Judge Ryu also

16   denied the motion to supplement.

17        Regarding the 11.7 hours billed for briefing a discovery dispute that was never filed, the

18   Court should award the full amount billed.  As Ms. Metaxas explains, "this work ultimately

19   resulted in a stipulation regarding the amount of stock ownership the various members of the

20   administrative committees owned at the time their claims decisions were made.  Defendants would

21   not have otherwise [] provided this information."  Repl., at 10.  Assuming this is the case, this

22   Court cannot say that these hours were excessive, redundant, or otherwise unnecessary.

23        Regarding the 40.7 hours billed for briefing the claim for disability benefits and equitable

24   relief, the number of hours should be reduced by 50%.  The disability benefits claim certainly

25   shared similar facts with Ms. Metaxas' successful termination benefits claim.  But the Court

26   should reduce the requested hours to account for the fact that while Ms. Metaxas achieved some

27   success (on the termination benefits), she did not succeed on the remainder of the suit (on the

28   disability benefits).  *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) ("If, however, the

United States District Court
Northern District of California

unsuccessful and successful claims are related, then the court must . . . evaluate[] the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.") (internal quotation marks omitted).

In sum, the Court awards 44.95 hours of the disputed 181.2 hours.  In total, the Court awards Ms. Metaxas 236.55 hours of the 372.8 requested hours in attorney's fees.

### 3.   Interest

Ms. Metaxas also claims prejudgment interest at 10% per annum.  MAF at 7–8.  Interest should accrue at the federal rate.  28 U.S.C. § 1961(a).  "[T]he interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate."  *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1164 (9th Cir. 2001).  Ms. Metaxas offers no compelling reason that the equities of this case require otherwise.  But because Ms. Metaxas' termination benefits claim has been remanded to the Committee, we need not award interest until the Committee makes its determination.

### 4.   Costs

Ms. Metaxas lastly claims an award of the $400 filing fee.  MAF, at 8.  A prevailing party may recover, as part of the award of attorney's fees, out of pocket costs that would normally be charged to a paying client.  *Harris v. Marhoerfer*, 24 F.3d 16, 19 (9th Cir. 1994).  Under Civil Local Rule 54-3(a)(2), an award of costs may include the clerk's filing fee "to extent reasonably required and actually incurred."  Here, the filing costs are reasonable and actually incurred.  Docket No. 94.  The Court may thus award it.  *See, e.g.*, *Powell v. Elijah Elec., Inc.*, No. C 09-01716 CW (JCS), 2009 WL 10709829, at *4 (N.D. Cal. Oct. 30, 2009), *report and recommendation adopted*, No. 09-01716 CW, 2009 WL 10709847 (N.D. Cal. Nov. 25, 2009) (award including $350.00 in filing costs).

///

///

///

///

United States District Court
Northern District of California

United States District Court
Northern District of California

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Ms. Metaxas' Motion for Attorney's Fees in the amount of $189,240 in attorney's fees (236.55 hours at $800 per hour) and $400 in costs for a total of $189,640.

This order disposes of Docket No. 96.

**IT IS SO ORDERED**.

Dated: November 15, 2022

_____
EDWARD M. CHEN
United States District Judge