UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POPPI METAXAS<br><br>Plaintiff,<br><br>v.<br><br>GATEWAY BANK F.S.B, et al.,<br><br>Defendants. | Case No. 20-cv-01184-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED SUPPLEMENTAL COMPLAINT**<br><br>Docket No. 135 |

## I. INTRODUCTION

This is an ERISA denial of benefits case involving whether Plaintiff is entitled to benefits under the terms of a supplemental executive retirement plan ("PLAN"). Plaintiff was the President and Chief Executive Officer for Defendant Gateway Bank prior to her disability and was a beneficiary of supplemental retirement benefits under it. Defendants are Gateway Bank, which is a small federally chartered savings bank in Oakland, CA, the Gateway Bank Supplemental Executive Retirement Plan (SERP), the Gateway Bank SERP Administrative Committee, which was an appointed committee to administer the SERP plan, and Gateway Bank SERP Appeals Committee, which oversaw the SERP plan review process (together, the "Defendants"). In her First Amended Supplemental Complaint, Plaintiff brings against Defendants four claims of (1) plan benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); (2) equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); (3) penalties under ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A) as to Defendant Plan Administrators Only; and, (4) enforcement of rights under terms of an ERISA plan pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

Now pending is Defendants' motion to dismiss Plaintiff's First Amended Supplemental Complaint pursuant to Rule 12(b)(6) for failure to state a claim. Docket No. 135. For the

following reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's First Amended Supplemental Complaint.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was President and Chief Executive Officer ("CEO") of Defendant Gateway Bank. Docket No. 132 at ¶ 10 (First Amended Supplemental Complaint ("FASC")). In 2004, Plaintiff alleges that in return for Plaintiff's agreement to remain its CEO, Defendant agreed to increase Plaintiff's compensation by approximately $300,000 per year in the form of deferred compensation. *Id.* at ¶ 14. Over the next seven years as part of the deferred compensation, Defendant purchased a $5 million life insurance policy ("Policy") from an insurance company, NY Life, on Plaintiff's life that would fund a customized Supplemental Executive Retirement Plan ("PLAN"). *Id.* at ¶ 15. The PLAN started in January 2005. *Id.* at ¶ 22.

The PLAN offered Disability and Termination benefits to certain key employees of the Bank, including Plaintiff. *Id.* at ¶ 29. Around the inception of the PLAN, Defendant created three accounts in its general ledger that related to the accounting of Defendant's PLAN benefit obligation to Plaintiff and/or Plaintiff's deferred compensation used to purchase the Policy. *Id.* at ¶¶ 33-34, 36. As of March 2010, Defendant's general ledger carried a liability for Plaintiff's PLAN benefits of $1,236,448.04. *Id.* at ¶¶ 37-38. As of June 2010, the cash value of the Policy was $1,867,581. *Id.* In April 2010, Defendant derecognized the accrued liability of Plaintiff's PLAN benefit on the Defendant's general ledger. *Id.* ¶ 28. The value of PLAN benefits ($1,236,448.04) added to Defendant's general ledger and increased Defendant's capital. *Id.* at ¶ 39.

Regarding the circumstances of her departure from Gateway Bank, Gateway Bank suspended Plaintiff without pay and Plaintiff resigned after the Bank discovered that Plaintiff had designed and engaged in round-trip transactions to offload non-performing assets. *United States v. Metaxas*, 449 F. Supp. 3d 24, 26 (E.D.N.Y. 2020). Specifically, while Plaintiff was serving as CEO of Gateway Bank, an agency of the United States Department of the Treasury and Gateway's regulator (the Office of Thrift Supervision or "OTS") notified Gateway's Board that Gateway was exposed to a cease-and-desist order for holding its "volume of non-performing loans and real

1   estate assets" then valued at $16 million. *Id.* at 25. Then, in February and March 2009, Plaintiff
2   "engineered a series of transactions designed to make it seem like Gateway had sold" these assets.
3   *Id.* Once the Board of Directors of Gateway Bank ("the Board") discovered her actions, the Board
4   suspended Plaintiff and she resigned. *Id.* at 25.

5         On March 31, 2014, the Government indicted Ms. Metaxas on three counts: "(1)
6   conspiracy to commit bank fraud against Gateway, 18 U.S.C. §§ 371, 3551; (2) bank fraud against
7   Gateway, 18 U.S.C. §§ 1344(2), 3551; and (3) perjury in her testimony before the OTS concerning
8   her knowledge of…[the source] for the down-payment on the toxic assets, 18 U.S.C. §§ 1621(1),
9   3551." *Id* at 26-27. In April 2015, Plaintiff "pled guilty to conspiring to defraud the United States
10  by committing bank fraud, in violation of 18 U.S.C. §§ 371 and 3551." *Metaxas v. United States*,
11  No. 23-7046, 2024 WL 4588903, at *1 (2d Cir. Oct. 28, 2024) (affirming district court's denial of
12  Ms. Metaxas's motion for a writ of error *coram nobis*). In December 2015, Ms. Metaxas was
13  sentenced to 18 months' imprisonment and three years of supervised release. *Id.*

14        Before her criminal indictment, in March 2013, Plaintiff filed a claim for Disability and
15  Termination benefits to Defendant. Docket No. 132 at ¶¶ 50-51. On February 25, 2016,
16  Defendant denied Plaintiff's claim. *Id.* During the pendency of her claim, Plaintiff requested
17  multiple times that Defendant produce certain documents to which she was entitled pursuant to
18  ERISA, the applicable Department of Labor regulations, and the terms of the PLAN. *Id.* ¶ 52. In
19  August 2016, Plaintiff appealed Defendant's denial. In May 2017, Defendant's Administrative
20  Committee upheld the decision to deny Plaintiff's benefit. *Id.* at ¶¶ 53-54.

21        In February 2020, Plaintiff filed an initial Complaint in this court seeking plan benefits
22  pursuant to ERISA §502(a)(1)(B) and equitable relief pursuant to ERISA §502(a)(3). Docket No.
23  1. In August 2022, the Court issued an order at summary judgment finding that Plaintiff was
24  entitled to termination benefits, but not disability benefits. Regarding Plaintiff's termination
25  benefits, the Court remanded to Defendant Plan Administrator to "reconsider Plaintiff's claim for
26  termination benefits in a manner consistent with this opinion." Docket No. 90. On August 26,
27  2022, the Court terminated the case. Docket No. 91. In March 2023, Defendant's Administrative
28  Committee, after reconsidering Plaintiff's claim for termination benefits, under Section 5.3(b) of

United States District Court
Northern District of California

1   the PLAN, found she was entitled to $9,252.95 per month since Plaintiff's retirement date on May
2   1, 2013. Docket No. 135 at 1.
3   　　　　In May 2023, Plaintiff again filed an appeal of Administrative Committee decision. The
4   appeal addressed: (1) the correct amount of past and future benefits due, which she argues should
5   be at least $19,626.16 per month; (2) her entitlement to interest on back benefits due for the past
6   thirteen years; and (3) Defendant's failure to produce documents and information relevant to
7   Plaintiff's claim. Docket No. 132 at ¶ 76. In June 2023, Defendant issued checks for the benefits
8   it conceded was owed, although various taxes were withheld on the checks; Defendant allegedly
9   failed to specify withholding information as require by California Labor Code § 226, et seq. *Id.* at
10  ¶ 79.
11  　　　　In February 2024, Plaintiff moved for leave to amend her complaint or to file a
12  supplemental complaint, which the Defendants did not oppose. *See* Docket Nos. 104, 112. In
13  March 2024, the Court formally reopened the case pursuant to Rule 60(b)(6) to grant Plaintiff
14  leave to amend to file a Supplemental Complaint. Docket No. 112. Plaintiff's Supplemental
15  Complaint addressed issues following the Court's remand of the termination benefits claim to
16  Defendant Plan Administrator. *See* Docket No. 90 (Summary Judgment Order). In her
17  Supplemental Complaint, Plaintiff asserted three claims against Defendants: (1) failure to pay all
18  benefits due in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); (2) equitable relief
19  from breach of duty of good faith under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); and (3)
20  failure to produce documents under ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(c). *See* Docket No.
21  113 (Supplemental Complaint or "SC"). Plaintiff sought declaratory, injunctive, equitable, and
22  monetary relief under ERISA § 502 and the Declaratory Judgement Act, 28 U.S.C. § 2201. *Id.* ¶1.
23  Defendants moved to dismiss the Supplemental Complaint under Rule 12(b)(6). *See* Docket No.
24  119.
25  　　　　In July 2024, the Court granted in part and denied in part Defendants' motion to dismiss
26  Plaintiff's Supplemental Complaint with leave to amend. Docket No. 127. Regarding Plaintiff's
27  first claim for PLAN benefits under ERISA § 502(a)(1)(B), the Court found that Plaintiff had
28  sufficiently pled a claim for termination benefits. *Id.* at 6. However, the Court granted dismissal

United States District Court
Northern District of California

1  of Plaintiff's claim as to interest and tax withholding with leave to amend.  The Court stated that
2  "Plaintiff should amend her complaint to include statutory basis, ERISA provision, or PLAN
3  terms that entitles her to the interest and tax withholding benefits on top of the Termination
4  Benefit." *Id.*

5        Regarding Plaintiff's claim for equitable relief under ERISA § 502(a)(3), the Court found
6  that her claim failed because, in part, she failed to establish that the relief she sought was
7  appropriate equitable relief against a non-fiduciary.  *Id.* at 8.  The equitable relief she sought
8  consisted of an equitable lien on Defendant's general assets, a constructive trust on the cash value
9  of the New York Life Insurance Policy which informally funds the SERP, an order requiring
10 Defendant to "properly account for all SERP related funds", an injunction to prevent Defendant
11 from altering the New York Life Insurance Policy, the appointment of an independent trustee to
12 administer the SERP, disgorgement of profits from derecognition and elimination of SERP
13 liability, interest and financing costs, and a monetary award in the amount of increased taxes she
14 must pay associated with SERP benefits.  SC ¶ 95(1)-(8)).  The Court held that Plaintiff was
15 seeking "additional monetary relief beyond the PLAN benefits." Docket No. 128 at 9.  The Court
16 found that her request amounted to "an equitable surcharge against Defendant[s] to compensate
17 her for the financial losses over and above her PLAN benefit as the consequence of Defendant[s']
18 breach." *Id.*  Because such a claim "lies only against a fiduciary" and, contrary to Plaintiff's
19 argument, the "duty of good faith is not an appropriate basis" to seek such equitable relief, the
20 Court dismissed this claim.  *Id.* at 9-10.  The Court provided Plaintiff leave to amend the
21 complaint to assert other equitable relief such as reformation or estoppel, if applicable.  *Id.* at 10.

22       Regarding Plaintiff's claim for penalties under § 502(a)(1)(A), the Court granted
23 Defendants' motion to dismiss as to this claim because 1) Plaintiff had failed to name the proper
24 defendant and 2) Plaintiff had failed to sufficiently allege that she requested Defendants to provide
25 documents requiring disclosure under ERISA.  The Court granted Plaintiff leave to amend to name
26 the proper defendants and to identify both the documents requested and the specific ERISA
27 provision governing each such request.  Docket No. 128 at 15.

28       In August 2024, Plaintiff filed her First Amended Supplemental Complaint ("FASC").

5

1   Docket No. 132.  Her FASC includes the following claims: (1) PLAN benefits under ERISA §
2   502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); (2) equitable relief under ERISA § 502(a)(3), 29 U.S.C.
3   § 1132(a)(3); (3) statutory penalties for failure to produce documents under ERISA §
4   502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), and (4) enforcement of rights under terms of ERISA §
5   502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

Now pending is Defendants' motion to dismiss Plaintiff's FASC under Rule 12(b)(6) for failure to state a claim.  Docket No. 135.

### III.  LEGAL STANDARD

Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff's "factual allegations [in the complaint] 'must... suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint ... may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

## IV. DISCUSSION

### A. PLAN Benefits Under ERISA § 502(a)(1)(B) [29 U.S.C. § 1132(a)(1)(B)]

The Court granted Plaintiff leave to amend her complaint to "include [a] statutory basis, ERISA provision, or PLAN terms that entitles her to the interest and tax withholding benefits on top of the Termination Benefit." Docket No. 127 at 6. The issue here is whether Plaintiff has adequately stated a claim for tax withholdings and prejudgment interest under ERISA § 502(a)(1)(B).

ERISA § 502(a)(1)(B) provides that a plan participant may bring a civil action "to recover benefits due to him under the terms of his plan; to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). To state a claim for denial of benefits under the relevant plan, the plaintiff must allege "'the existence of an ERISA plan,' and identify 'the provisions of the plan that entitle [them] to benefits.'" *Doe v. CVS Pharmacy, Inc*., 982 F.3d 1204, 1213 (9th Cir. 2020) (quoting *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc*., 99 F. Supp. 3d 1110, 1155 (C.D. Cal. 2015)).

Plaintiff has failed to identify any PLAN term that entitles Plaintiff to the requested tax withholdings and prejudgment interest, nor does Plaintiff identify relevant ERISA terms that would provide such relief. Instead, Plaintiff alleges that "duties…not explicitly stated in the Plan…constitute implied terms thereof." Docket No. 132 at ¶ 99. Yet, mere implied terms which are not plainly contained in the PLAN are insufficient to seek recovery for benefits under ERISA § 502(a)(1)(B). As the Supreme Court ruled in *CIGNA Corp. v. Amara*, "statements [that] do not themselves constitute the *terms* of the plan" cannot serve as "authority" to bring a claim under ERISA § 502(a)(1)(B). *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011). To state a claim for tax withholdings and prejudgment interest under ERISA § 502(a)(1)(B), Plaintiff must identify a specific PLAN provision entitling her to these benefits.*" CVS Pharmacy, Inc.,* 982 F.3d at 1213 (9th Cir. 2020) (holding that to state a claim under ERISA § 502(a)(1)(B), a plaintiff must identify "the provisions under the plan that entitle [them] to [those] benefits"); *see* ERISA § 502(a)(1)(B) (providing recovery for benefits due to a plan participant "under the terms of [her] plan"). She

1   fails to do so.  Therefore, Plaintiff fails to state a claim for recovery for either benefit under

2   ERISA § 502(a)(1)(B).

3   Next, Plaintiff fails to provide a statutory basis entitling her to prejudgment interest.

4   Courts grant an award of prejudgment interest, not based on a statute, but rather when fairness so

5   requires.  "[I]n the ERISA context, an award of prejudgment interest is 'a question of fairness,

6   lying within the court's sound discretion, to be answered by balancing the equities.'"  *Acosta v.*

7   *City Nat'l Corp.*, 922 F.3d 880, 891 (9th Cir. 2019) (citing *Landwehr v. DuPree*, 72 F.3d 726, 739

8   (9th Cir. 1995)).  In other words, when equity favors an award of prejudgment interest, a court

9   may do so.  But absent a statutory basis, under ERISA § 502(a)(1)(B), Plaintiff has not established

10  an entitlement to prejudgment interest.  Because Plaintiff fails to provide such a basis for

11  prejudgment interest, Plaintiff's claim of entitlement to prejudgment interest under ERISA §

12  502(a)(1)(B) fails.

13  Plaintiff cites to 28 U.S.C. § 1961 and *Blankenship v. Liberty Life Assurance Co.* 486 F.3d

14  620.  Neither *entitles* her to prejudgment interest.  *Blankenship* states that a "district court may

15  award prejudgment interest on an award of ERISA benefits *at its discretion*."  *Blankenship v.*

16  *Liberty Life Assurance Co.*, 486 F.3d 620, 627 (9th Cir. 2007) (emphasis added).  The Ninth

17  Circuit held that where such prejudgment interest is awarded in the court's discretion, the court

18  may rely on 28 U.S.C. § 1961 to fix the rate of interest, even though that statute only prescribes

19  the rate for post-judgment interest.  *Id.*  Importantly, 28 U.S.C. § 1961 merely informs the rate of

20  interest once a court exercises its discretion to award prejudgment interest.  In sum, the award of

21  prejudgment interest in ERISA cases such as the instant case lies in the discretion of the court; it is

22  not a matter of entitlement.

23  The parties have not briefed whether Plaintiff should be awarded prejudgment interest as a

24  matter of the Court's discretion.  They have not briefed the factors that should be considered and

25  how they apply to the instant case.  Hence, the issue of discretionary prejudgment interest shall be

26  deferred.

27  Thus, Plaintiff fails to offer a statutory basis or PLAN term entitling her to recovery of

28  either tax withholdings or prejudgment interest.  Accordingly, the Court **GRANTS** Defendants'

8

motion to dismiss Plaintiff's claim for tax withholding and prejudgment interest without prejudice to raising the question of a discretionary award of prejudgment interest.

### B. Equitable Relief Under ERISA § 502(a)(3) [29 U.S.C. § 1132 (a)(3)]

Second, the Court analyzes whether Plaintiff adequately stated a claim for equitable relief under ERISA § 502(a)(3). The Supreme Court has identified three traditional equitable remedies that may be available under § 502(a)(3): (1) reformation of the terms of the plan when there is evidence of a mistake of fact or law that affected the terms of the instrument, (2) equitable estoppel holding the fiduciary to "what it had promised" and the person entitled to benefits "in the same position he would have been in had the representations been true," and (3) surcharge or monetary "compensation." *CIGNA Corp. v. Amara*, 563 U.S. 421, 443 (2011).

The Court dismissed Plaintiff's request for equitable relief because what she sought amounted to "an equitable surcharge against Defendant[s] to compensate her for the financial losses over and above her PLAN benefit as the consequence of Defendant[s'] breach." Docket No. 128 at 9. Because such a claim "lies only against a fiduciary" and, contrary to Plaintiff's argument, the "duty of good faith is not an appropriate basis" to seek such equitable relief, the Court dismissed the request. Docket No. 128 at 9. The Court provided Plaintiff leave to amend the complaint to assert other equitable relief such as reformation or estoppel, if applicable. *Id.* at 10.

#### 1. Equitable Surcharge

In her FASC, Plaintiff reiterates the same eight categories of equitable relief that the Court previously deemed an equitable surcharge under theories of reformation and estoppel. Docket No. 132 at 22-23. As Plaintiff has failed to allege anything that is materially different from the prior complaint, the Court adheres to its ruling that "additional monetary relief beyond the PLAN benefits" as asserted is unwarranted. Docket No. 128 at 9. Plaintiff's claims for the equitable relief of estoppel and reformation are also meritless for the reasons stated below.

#### 2. Equitable Estoppel and Reformation

Under theories of equitable estoppel and reformation, Plaintiff seeks to include her salary deferrals in the calculation of her salary allowance as defined in Section 2.16 of the PLAN.

Regarding equitable estoppel, Plaintiff seeks to "[e]quitably estopp Defendants from computing her plan benefits without including the amount of her deferred compensation used to purchase the life insurance policy 'informally funding' the Plan as part of her salary allowance." Docket No. 132 at 27. Regarding reformation, Plaintiff seeks to "[r]eform the SERP to give rise to the true intent of the parties at the time the SERP was created by requiring Defendants to calculate Plaintiff's benefits using her salary deferrals as a factor in computing her 'Salary Allowance.'" Docket No. 132 at 27. However, neither form of equitable relief is warranted.

"Equitable remedies are not available where the claim 'would result in a payment of benefits that would be inconsistent with the written plan.'" *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 962 (9th Cir. 2014) (citing *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822 (9th Cir. 1992). The Ninth Circuit has explained the relevant policy rationale: "The actuarial soundness of pension funds is, absent extraordinary circumstances, too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the *express* terms of the pension plan." *Gabriel*, 773 F.3d at 956 (citing *Phillips v. Kennedy*, 542 F.2d 52, 55 n. 8 (8th Cir.1976)) (emphasis added).

Here, Plaintiff asserts equitable estoppel because Defendants allegedly "knew that Plaintiff's SERP benefits should have been computed by including her salary deferrals as a factor in calculating her 'Salary Allowance' under the terms of [the PLAN]." Docket No. 132 at ¶ 121. Thus, Plaintiff argues that the relevant ERISA plan provision (Section 2.16 on salary allowance) should in effect be modified to include Plaintiff's salary deferrals in calculating her salary allowance based on estoppel. Plaintiff argues that "[i]t was intended by Plaintiff and Defendants that the amount of Plaintiff's deferred compensation used to pay the premiums for the life insurance used to fund the SERP be a factor in computing her Salary Allowance and monthly benefit payment amount." Docket No. 132 at ¶ 20.

Similarly, to seek reformation of the PLAN, Plaintiff appears to allege that Plaintiff "reasonably relied upon [Defendants'] representations" that "Plaintiff's [PLAN] benefits should have been computed by including her salary deferrals as a factor in calculating her 'Salary Allowance' under the terms of [the PLAN]." Docket No. 132 at ¶ 121. Plaintiff states that the

parties "intended that the amount of Plaintiff's deferred compensation used to pay the premiums for the life insurance funds…be a factor in computing her 'Salary Allowance' and monthly benefit payment amount." Docket No. 137 at ¶ 3.

The Court rejects Plaintiff's equitable estoppel and reformation claim. As stated, "equitable remedies are not available where the claim would result in a payment of benefits that would be inconsistent with the written plan." *Gabriel,* 773 F.3d at 962 (9th Cir. 2014) (internal citation omitted). The express terms of the Plan are what govern, not what Plaintiff seeks to impose by way of a claim of *e.g.* estoppel. Section 2.16 of the PLAN on 'Salary Allowance' defines the term as the product of the "Participant's salary rate (calculated *before* reduction for any taxes due or *amounts deferred pursuant to any deferral arrangement* by which the Participant can defer the current receipt of income) in effect upon the Participant's Participation date" and a "factor equal to 1.035 compounded by the number of whole years between the Participant's Participation Date and the date the Salary Allowance is calculated." Docket No. 132-1 at 6 (PLAN) (emphasis added). The plan provision on "Salary Allowance" does not include salary deferrals in the relevant calculation. Thus, "recovery on the [equitable estoppel and reformation] claim[s] "would, as a practical matter, result in an amendment or modification of [the] plan." *Wong,* 999 F.3d at 1207. That is, "allowing [Plaintiff] to assert her equitable estoppel [and reformation] claims against [Defendants] would contradict the clear terms of the [PLAN]" regarding the calculation of the salary allowance under Section 2.16. *Id.* at 1212. Therefore, Plaintiff's claim for equitable relief under theories of equitable estoppel and reformation fails.

For the foregoing, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's claim for equitable relief with prejudice.

C. **Penalties Under ERISA § 502(a)(1)(A) [29 U.S.C. § 1132(a)(1)(A)] as to Defendant Plan Administrators Only**

Next, the Court evaluates whether Plaintiff adequately states a claim for penalties under ERISA § 502(a)(1)(A). Plaintiff seeks penalties for Defendant's alleged failure to provide documents and information in violation of ERISA § 502(c). ERISA § 502(c) provides penalties for failure to comply with a request for information that an ERISA statute requires a party to

11

furnish. In its previous order granting Defendants' motion to dismiss as to this claim, the Court granted Plaintiff leave to amend to name the proper defendants and to identify both the documents requested and the specific ERISA provision governing each such request. Docket No. 128 at 15.

### 1. **Proper Defendant**

Penalties under Section 502(c)(1) can only be asserted against the Plan Administrator. *Sgro v. Danone Waters of N. Am., Inc*., 532 F.3d 940, 945; *see also Moran v. Aetna Life Ins. Co*., 872 F.2d 296, 299 (9th Cir. 1989) (finding that court should strictly apply § 502(c) statutory penalties to those who fall within the explicit definition of plan administrator.).

ERISA defines a plan administrator as:

> …the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A); *Castillo v. Cmty. Child Care Council of Santa Clara Cnty*., Inc., No. 17-cv-07243-SVK, 2018 U.S. Dist. LEXIS 88061, at *32, 2018 WL 2357698 (N.D. Cal. May 24, 2018).

Here, Plaintiff has amended her supplemental complaint alleging the plan administrators include Gateway Bank SERP Administrative Committee and the Gateway Bank SERP Appeals Committee. However, the PLAN documents clearly state the PLAN administrator is the administrative committee consisting of more than three Board-appointed persons. Docket No. 119-2 at PDF 10, Exh. 1, Section 7.1 ("SERP is administered by an Administrative Committee consisting of no less than three persons appointed by the Board of Directors of Gateway Bank"). Thus, under ERISA § 502(c), the only proper defendant for this claim is Gateway Bank SERP Administrative Committee. Therefore, the Court **GRANTS** Defendants' motion to dismiss this claim as to the other defendants including Gateway Bank, F.S.B., Gateway Bank Supplemental Executive Retirement Plan, and Gateway Bank SERP Appeals Committee.

12

### 2. Requests for PLAN Documents

ERISA provides remedies for a plan administrator's failure to comply with a request by a participant or a beneficiary for certain plan information. ERISA § 502(a)(1)(A), (c), 29 U.S.C. § 1132(a)(1)(A), (c). Specifically, a plan administrator has thirty days to respond to the written request of a plan participant or beneficiary to furnish a copy of the latest summary plan description or other plan documents. ERISA also requires plan administrators to furnish a plan participant or beneficiary with a statement of accrued benefits if they request one in writing. ERISA § 105(a), 29 U.S.C. § 1021(a). Failure to respond to a written request for such information can subject an employer to a fine of $110 for each day that the employer fails to respond. 29 C.F.R. § 2575.

#### a. Plaintiff fails to cure deficiencies related to this claim

As in her original complaint, Plaintiff alleges that Defendant violated ERISA § 502(c) by failing to produce requested documents relevant to the PLAN and Plaintiff's benefits. Docket No. 132 at ¶ 132. Plaintiff seeks penalties for Defendant's alleged violation. *Id.* Previously, the Court granted Plaintiff leave to amend her complaint to "identify [the] documents requested and which specific ERISA provision governs each such request." *Id.* at 14. In her FASC, Plaintiff fails to cure these deficiencies.

As to the first deficiency, in her FASC, Plaintiff does not identify the specific documents requested. Instead, she generally alleges that her requests for documents and information fall within eight broad categories and attaches a 34-page exhibit of correspondences with Defendants regarding her document requests. *See* Docket No. 132-2. These eight categories include: 1) administration of the plan, 2) plan documents, 3) plan instruments, 4) claims procedures or other documents demonstrating compliance with 29 CFR 2560.503(b)(2) and (5) created at, or since, the inception of the plan, 5) plan funding, 6) the identity of the plan administrator, 7) benefit calculation and correct payment and taxing of benefits paid, and 8) documents relied upon, considered, or generated in the course of making the benefits decisions in this claim. Docket No. 132 at 24-25.

As to the second deficiency, and perhaps more fundamentally, Plaintiff fails to identify the "specific ERISA provision [that] governs each such request." Docket No. 128 at 14. Instead, she

13

merely lists: ERISA §§ 102 and 104(b), 29 CFR § 2520.104, 29 CFR § 2560.503(b)(2) and (5), and 29 CFR § 2560.503(m)(8). *See* Docket No. 132 at ¶ 131. Therefore, as in her previous complaint:

> Plaintiff fails to allege a specific ERISA provision that requires Defendant to produce the requested documents. In *LD v. United Behavioral Health*, this Court dismissed the plaintiff's claim under § 502(c) because…his request…did not fall within…any…alleged provision.

Docket No. 128 at 13. *See* 2020 U.S. Dist. LEXIS 155224 at *13-14 (N.D. Cal. Aug. 26, 2020). So too here. In her FASC, Plaintiff continues to fail to identify the documents requested and which specific ERISA provision governs each of those requests.

### b. **Statutes that Plaintiff cites do not create a document disclosure requirement**

Even if Plaintiff had cured the deficiencies from her earlier complaint and aligned each document request to a specific statute, none of the statutes on which Plaintiff relies provide a basis to seek document disclosure and penalties for the failure to do so.

First, neither ERISA §§ 102 and 104(b) nor 29 C.F.R. § 2520.104 are valid bases for Plaintiff to seek recovery of penalties. The reporting and disclosure requirements of ERISA §§ 102 and 104(b) of Part 1 of Title I of ERISA do not bind top-hat plans. *See* 29 C.F.R. § 2520.104–23. Plaintiff concedes that her PLAN is a "top-hat" plan. Docket No. 121 at 9. A top-hat plan is a plan "which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a selected group of management or highly compensated employees." ERISA § 401(a). "Top-hat plans form a rare sub-species of ERISA plans, and Congress created a special regime to cover them." *Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1193. As is relevant here, 29 C.F.R. § 2520.104–23 provides for "an alternative method of compliance with the reporting and disclosure requirements" of ERISA for top hat plans.

Under 29 C.F.R. § 2520.104–23, the "administrator of a pension plan…shall be deemed to satisfy the reporting and disclosure provisions of part 1 of title I of the Act by 1) Filing a statement with the Secretary of Labor…, and 2) Providing plan documents, if any, to the Secretary upon

14

request…" *See* 29 C.F.R. § 2520.104–23. Thus, ERISA §§ 102 and 104(b) are not proper bases for Plaintiff to seek recovery of penalties related to the plan administrator's compliance with ERISA's reporting and disclosure requirements. As stated, 29 C.F.R. § 2520.104–23 governs the reporting and disclosure requirements for top-hat plans. Compliance with 29 C.F.R. § 2520.104–23 entails disclosures to the Secretary of Labor, not a plan participant such as Plaintiff. Therefore, 29 C.F.R. § 2520.104 is thus not a proper basis for Plaintiff to seek recovery of penalties related to compliance with reporting and disclosure requirements.

Second, neither 29 CFR § 2560.503(b)(2) nor (5) nor 29 CFR § 2560.503(m)(8) support Plaintiff's claim for penalties because none of these provisions creates a document disclosure requirement. The first two provisions relate to establishing and maintaining reasonable claim procedures. Specifically, 29 CFR § 2560.503(b)(2) states:

> A description of all claims procedures (including, in the case of a group health plan within the meaning of paragraph (m)(6) of this section, any procedures for obtaining prior approval as a prerequisite for obtaining a benefit, such as preauthorization procedures or utilization review procedures) and the applicable time frames is included as part of a summary plan description meeting the requirements of 29 CFR 2520.102-3.

This provision thus states that descriptions of procedures and applicable time frames is included as part of a summary plan description. 29 CFR § 2560.503(b)(5) provides:

> The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants.

Neither of these provisions creates a document disclosure requirement.

Similarly, 29 CFR § 2560.503(m)(8) does not create a document disclosure requirement. This statute defines the term "relevant":

> A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information
>
> (i) Was relied upon in making the benefit determination;
>
> (ii) Was submitted, considered, or generated in the course of making

15

> the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
>
> (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or
>
> (iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

29 CFR § 2560.503(m)(8). To be sure, the definition of 'relevant' under this section applies to 29 CFR § 2560.503(h)(2)(iii) on full and fair reviews of appeals of adverse benefit determinations, which states that "claims procedures of a plan" must:

> Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

29 CFR § 2560.503(h)(2)(iii). However, Plaintiff failed to cite this section in support of her claim for disclosure of documents. In any event, Defendants represented that they have produced to Plaintiff everything relevant to the Committee's review of her claim for benefits. Hearing Trs. 13:1-24. Plaintiff has not demonstrated Defendants have denied any relevant documents; the scope of her request, as discussed below, far exceeds that which might reasonably be deemed relevant to her claim for benefits.

Because Plaintiff offers 29 CFR § 2560.503(m)(8) as a basis to seek penalties against the Plan Administrator for failure to disclose documents under ERISA § 502(a)(1)(A), (c), 29 U.S.C. § 1132(a)(1)(A), (c) and 29 CFR § 2560.503(m)(8) does not establish a requirement to produce or disclose documents, 29 CFR § 2560.503(m)(8) is not a valid basis to seek penalties against the Plan Administrator.

As Plaintiff has failed to cure the deficiencies from her earlier complaint and the statutes she cites to do not create a document disclosure requirement on which a penalty may be based, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's claim for failure to comply with a request by a participant or a beneficiary for certain plan information under ERISA § 502(c).

16

D. **Enforcement of Rights Under Terms of an ERISA Plan Pursuant to ERISA § 502(a)(1)(B) [29 U.S.C. § 1132(a)(1)(B)]**

Plaintiff also seeks enforcement of a PLAN term allowing a claimant to "examine [] pertinent documents" on review of their claim. *See* Docket No. 132-1 at 10 (PLAN, Section 8.3 'Review of Claim'); *see* above section on PLAN Benefits Under ERISA § 502(a)(1)(B) disclosing applicable legal standard.

Consistent with ERISA § 502(a)(1)(B), Plaintiff must properly identify a provision "under the terms of the plan" entitling her to a right to "examine [] pertinent documents" during a review of her claim for a PLAN benefit, request for an "interpretation or ruling under the Plan," or request for "information under the Plan." ERISA § 502(a)(1)(B) and Docket No. 132-1 (PLAN, Section 8.1 'Claim'). Here, Plaintiff identifies Section 8.3 of her PLAN which recites:

> Any person whose claim or request is denied or who has not received a response within 30 days may request a review by notice given in writing to the Committee. The claim or request shall be reviewed by the Committee who may, but shall not be required to, grant the claimant a hearing. On review, the claimant may have representation, *examine the pertinent documents*, and submit issues and comments in writing.

Docket No. 132-1 at 10 (PLAN, Section 8.3 'Review of Claim') (emphasis added).

Plaintiff alleges that only those "document requests…made between November 4, 2022, and June 16, 2023" are "at issue." Docket No. 137 at 13. In her FASC, Plaintiff fails to identify the specific documents requested and why these are pertinent under Section 8.3 of her PLAN. In opposition, Defendants argue that her claim is moot because the "claims period has expired." Docket No. 139 at 6.

Under Section 7.1 of the PLAN, the "Administrative Committee" has the "authority to…interpret" all appropriate rules and regulations for the administration of this Plan and decide or resolve any and all questions including interpretations of this Plan, as may arise in connection with the Plan." Docket No. 132-1 at 9 (PLAN, Section 7.1 'Review of Claim'). Thus, the Administrative Committee has the "authority" to interpret the meaning of "pertinent" and "[o]n review," with regards to enforcing Section 8.3 of Plaintiff's PLAN. *Id.*

1    Defendants argue that Section 8.3 provides Plaintiff a right to examine documents "only
2    during the Administrative Committee's review of her claim" and the right "expir[es] once that
3    review is complete." Docket No. 135 at 11. Thus, Defendants state that "Plaintiff's alleged right
4    to examine additional documents under the [PLAN's] terms has expired." *Id.* at 12. Further, as
5    Defendants note, "Plaintiff has not alleged that the Administrative Committee's interpretation
6    [informing its denial of Plaintiff's document requests] should be set aside." Docket No. 139 at 8
7    (Defendants' Reply).
8    While Section 7.1 of the PLAN provides the Administrative Committee with the authority
9    to "decide…interpretations of this Plan," the Administrative Committee's interpretation is overly
10   narrow as it would effectively prevent claimants from any meaningful review of the benefits
11   decision. Docket No. 132-1 at 10 (PLAN, Section 8.3 'Review of Claim'). However, the issue is
12   moot because, under any reasonable interpretation, Defendants properly assert they have produced
13   all pertinent documents; they produced the documents pertaining to the Committee's review of
14   Plaintiff's benefits claim. Specifically, Defendants represented at the hearing that they have
15   produced to Plaintiff everything relevant to the Committee's review. Hearing Trs. 13:1-24. That
16   is, Defendants represented that they produced all documents "relevant to whether or not the plan
17   and the committee abused its discretion" when determining "Ms. Metaxas's benefits on remand."
18   Hearing Trs. at 15:13-16.
19   The Court agrees that Plaintiff's requests for other documents are not pertinent. These
20   include, for example:

21   - "Board resolution…appointing the members of the SERP Administrative
22     Committee", or
23   - "Copies of all 'written instruments'…and/or other documents establishing and/or
24     comprising the SERP plan under which Ms. Metaxas is a participant," or
25   - "All designations of SERP plan participants made by the Board…[and] all
26     notifications of participation and/or 'forms required by the Employer' for
27     participation in the plan since inception of the plan," or
28   - "All Articles of Incorporation and By-laws of Gateway Bank FSB in existence at

the inception of the SERP plan as well as any subsequent amendments thereto." Docket No. 132-2 at 1-2. These broad requests do not pertain to the Committee's review of Plaintiff's benefits claim. In her FASC, Plaintiff fails to demonstrate why each of the document requests in her correspondences are pertinent under Section 8.3 of the PLAN.

Therefore, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiff's claim for an enforcement of rights under ERISA § 502(a)(1)(B) to obtain documents beyond those already produced.

### V.     CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's First Amended Supplemental Complaint. Thus, pursuant to the Court's July 2024 order, Plaintiff's sole remaining claim is her claim for termination benefits under ERISA § 502(a)(1)(B). Docket. 127 at 6.

**IT IS SO ORDERED**.

Dated: February 19, 2025

_____
EDWARD M. CHEN
United States District Judge