UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POPPI METAXAS,<br><br>    Plaintiff,<br><br>    v.<br><br>GATEWAY BANK, F.S.B., et al.,<br><br>    Defendants. | Case No.  20-cv-01184-EMC<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT RE BENEFIT<br>CLAIM**<br><br>Docket Nos. 158, 159, 173 |

## I.      INTRODUCTION

Plaintiff Poppi Metaxas served as President and CEO of Defendant Gateway Bank, F.S.B. ("Gateway" or "Bank") from 2004 through 2010.  During her tenure, Metaxas caused Gateway to engage in fraudulent transactions to conceal Gateway's actual financial condition.  Summary Judgment Order (Dkt. 90) at 4–5.  Metaxas was suspended without pay by Gateway's Board in 2010 for her conduct, and she pled guilty to federal conspiracy to commit bank fraud in 2015.  *Id.* at 5, 10.  At Metaxas's sentencing, a Gateway representative testified that Metaxas's unlawful conduct caused significant monetary damages to the Bank, causing the Bank's stock prices to drop and a number of employees to lose their jobs.  *Id.*  Metaxas was sentenced to 18 months incarceration for her conduct.  *Id.*

After her suspension from Gateway, Metaxas submitted a claim for termination benefits. *Id.* at 11.  This action concerns the amount of termination benefits to which Metaxas is entitled under Gateway's Supplemental Executive Retirement Plan ("SERP" or "Plan"), a top-hat plan sponsored by Gateway.  At this juncture, the parties no longer dispute that Metaxas is eligible for

United States District Court<br>Northern District of California

termination benefits. The dispute here solely concerns the *amount* of the monthly benefit and, in particular, the meaning and application of the SERP's calculation of "salary rate" and "salary allowance."

For the reasons discussed below, the Court concludes that Gateway's post-remand determination reflects a reasoned interpretation of the SERP grounded in the administrative record and within the scope of discretionary authority conferred by the SERP; it is not based on arbitrary decisionmaking or self-dealing. Metaxas has not shown entitlement to her requested calculation on summary judgment. Accordingly, the Court **GRANTS** Gateway's motion for summary judgment and **DENIES** Metaxas's parallel motion.

## II.    BACKGROUND

### A.    Factual & Procedural Background

Metaxas served as Gateway's President and CEO, and beginning in late 2004, became the sole participant in Gateway's SERP — a top-hat plan intended to reward or attract valuable talent. *Id.* at 2, 4. As described in the Court's prior summary judgment order, the SERP provides three mutually exclusive categories of supplemental benefits beyond ordinary wages and retirement benefits: retirement, disability, and termination benefits. *Id.* at 3.

In 2010, the federal Office of Thrift Supervision informed Gateway's Board about Metaxas's fraudulent conduct, and the Board subsequently suspended Metaxas without pay, pending further investigation. *Id.* Metaxas later pled guilty to the charges and served an 18-month sentence.

In March 2013, nearly three years after resigning as Gateway's President and CEO, Metaxas submitted a claim for SERP benefits, seeking both disability and termination benefits pursuant to the Plan. *Id.* at 1. After administrative proceedings spanning several years, Gateway's SERP Administrative Committee (the "Initial Claim Committee" or "Committee") denied her claim and the SERP Appeals Committee (the "Appeals Committee") (together, the "Committees") denied Metaxas's administrative appeal in 2017. *Id.* at 1, 11–12. Metaxas subsequently sued in federal court to challenge the Committees' denial of benefits.

Despite Metaxas's criminal conduct, the Court concluded that, based on the terms of the

2

Plan and the undisputed facts surrounding the manner in which her departure was handled, the administrative denial of Metaxas's claim was inadequately supported by evidence in the record and thus an abuse of discretion. *Id.* at 20–29. The Court therefore granted Metaxas's motion for summary judgment in part, and remanded the matter to the Committee for reconsideration of Metaxas's eligibility for termination benefits consistent with the Court's decision. *Id.* at 1, 40. The Court did not determine whether Metaxas was entitled to benefits or the amount of any benefits to be owed, leaving those issues to be addressed on remand. *Id.*

B.    Facts Relevant to the Pending Motions

On remand, the Initial Claim Committee determined that Metaxas is eligible for termination benefits under the Plan. AR 4852. In connection with that determination, the Initial Claim Committee calculated a monthly termination benefit based on its interpretation of the evidence and the SERP's provisions for calculating benefits. AR 4852–58.

Under the SERP, Metaxas's termination benefit is calculated by reference to her "salary allowance" multiplied by a fraction equal to the portion of the 100 months that Metaxas was anticipated to work between her SERP participation date beginning January 2005, and her intended retirement date of April 2013. AR 5102–06 (SERP §§ 2.1, 2.2, 2.14, 2.15, 2.16, 5.3); Plaintiff's Opposition Brief (Dkt. 161), Ex. 1 (listing Metaxas's date of birth as April 20, 1953 and her age at retirement as 60). The SERP defines "salary allowance" as follows:

> 2.16 Salary Allowance. "Salary Allowance" means the product of (a) and (b) below:
>
> (a) The Participant's *salary rate* (calculated *before reduction* for any taxes due or *for amounts deferred pursuant to any deferral arrangement by which the Participant can defer the current receipt of income*) in effect upon the Participant's Participation Date, and
>
> (b) A factor equal to 1.035 compounded by the number of whole years between the Participant's Participation Date[1] and the date the Salary Allowance is calculated.

---

[1] With respect to the Participation Date, the parties agree that the date under the Plan is January 1, 2005. *See* AR 4853 (Initial Claim Committee Decision); AR 4865 (Plaintiff's Response to Initial Claim Committee Decision).

United States District Court
Northern District of California

AR 5104 (emphases added).

Central to the dispute is the SERP's use of the term "salary rate." The SERP does not further define "salary," "salary rate," or "salary allowance," nor does it explain when employer-provided compensation or benefits qualify as "amounts deferred." *See* AR 5100–12. But the Plan is clear that salary amounts which are deferred pursuant to a deferral arrangement are to be included in calculating the "salary rate." Any "amount deferred" must be "pursuant to any deferral arrangement by which the Participant can defer the current receipt of income." AR 5104.

At issue here is whether premiums Gateway paid on a life insurance policy on Metaxas's life to fund the SERP should be included in the "salary rate" as deferred salary. Metaxas contends that amount should be included as deferred salary. Gateway asserts it should not.

The Court first considers the nature and circumstances of Gateway's purchase of the life insurance policy. The SERP is "unfunded and maintained by" Gateway. Summary Judgment Order at 39. To manage the anticipated cost of the SERP obligation, Gateway purchased a Bank-owned life insurance ("BOLI") policy on Metaxas's life and paid premiums on that policy. *See* AR 4855. The parties describe the BOLI policy as an informal funding mechanism for Gateway's SERP obligations — *i.e.*, an employer-owned asset intended to offset Gateway's obligations to pay for future benefit payment obligations. *See* AR 5112; Plaintiff's SJ Motion at 6; Defendant's SJ Motion at 3. The BOLI policy, which the parties agree is a whole-life policy, would accumulate cash value over time and, assuming Metaxas did not die before retirement, the policy had a substantial cash surrender value payable exclusively to Gateway with no entitlement held by Metaxas or her designated beneficiaries. *See* AR 110–12 (BOLI Policy Summary) (listing cash surrender value as $764,974.81 for 2006); AR 5112 (Split Dollar Endorsement) ("The Owner of the [BOLI] policy is Gateway Bank, F.S.B. . . . . The Owner alone may exercise all policy rights, . . . . If the Insured's employment terminates, other than by reason of death, the Owner will be the sole unrestricted owner of the policy, and the sole beneficiary of the entire policy proceeds, and the beneficial and ownership rights vested in the Insured."); Hearing Transcript, January 22, 2026 (Dkt. 172) at 4:23–5:7 (describing BOLI as whole-life policy and investment vehicle). The SERP is clear that no SERP benefits would be allocated if Metaxas died while employed. AR 5106

United States District Court
Northern District of California

4

(SERP § 4.1) ("If a Participant dies while employed by Employer, no benefit shall be payable by Employer under the Plan."). Instead, if Metaxas had died during the course of her employment, the life insurance benefit would have been payable to her husband as the primary beneficiary of the policy. *Id.*; AR 5112 (Split Dollar Endorsement) (listing husband as primary beneficiary of BOLI policy). In virtually every respect, the policy was similar to a savings account or bond, essentially an investment asset maintained by Gateway.

### 1. Gateway's Calculation of Salary Rate

The Initial Claim Committee calculated Metaxas's salary rate as $330,000. AR 4854. The Committee included only Metaxas's base salary, calculated before taxes, without any amount supposedly deferred. AR 4847–59. According to the Committee's calculations, Metaxas's total SERP benefit, based on the $330,000 salary rate, totals $9,252.95 per month. AR 4858. The Appeals Committee adopted the Initial Claim Committees' reasoning and affirmed the calculation, reiterating that BOLI premiums were employer expenses paid into a Gateway-owned policy. AR 5217.

### 2. Metaxas's Calculations of Salary Rate

Critically for this dispute, the annual premium amount on the BOLI policy was $290,449.51. AR 120; AR 4855. Metaxas maintains that her salary rate should include two components: (1) $330,000 in annual take-home pay, *and* (2) the $290,449.51 in annual BOLI premium payments. Metaxas characterizes the BOLI premium payments as a form of deferred income, arguing that the payments comprise a portion of her total salary rate according to the SERP's terms. Plaintiff's Summary Judgment Motion (Dkt. 158) at 6 ("After the policy was fully funded, the amount expended for premium payments was to be added to her take-home pay."). Including the $290,449.51 in her salary rate would raise her monthly SERP benefit considerably.

## III.    LEGAL STANDARD

### A.    Summary Judgment Standard in ERISA Context

As the Court previously determined, because the Plan grants discretionary authority to Gateway's SERP Plan Administrator, the Court reviews the Committees' decisions for an abuse of discretion. Summary Judgment Order at 17; *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917,

United States District Court
Northern District of California

928 (9th Cir. 2012). "Under this deferential standard, a plan administrator's decision 'will not be disturbed if reasonable.'" *Stephan*, 697 F.3d at 928–29. The Court defers to the Committees' decisions unless they were "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (citation omitted). The Court applies this deferential standard to top hat plans as well. *See Sznewajs v. U.S. Bancorp Amended and Restated Supplemental Benefits Plan*, 572 F.3d 727, 734 (9th Cir. 2009), *rev'd on other grounds*, *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666 (9th Cir. 2011) (holding that top hat plan status does not compel de novo review of an administrator's benefit determination). The test for abuse of discretion is whether a Court is "left with a definite and firm conviction that a mistake has been committed." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (citation omitted). The Court may not merely substitute its view for that of the fact finder. *Id.*

Additionally, the Ninth Circuit does not permit an ERISA plaintiff "to be 'sandbagged' by a rationale the plan administrator adduces only after the suit has commenced." *Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1104 (9th Cir. 2003). Instead, the Ninth Circuit adheres to "the general rule that 'an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself,' not a subsequent rationale articulated by counsel." *Id.* (citation omitted).

Despite arising in the summary judgment context, the standard summary judgment principles must be governed by the abuse of discretion standard in this ERISA context. *Nolan v. Heald College*, 551 F.3d 1148, 1154 (9th Cir. 2009). In such cases, a motion for summary judgment is, "merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Id.* (internal quotation marks omitted).

B.    Conflicts of Interest and Scope of Review

The Court must also consider the role of alleged conflicts of interest in reviewing the Committees' decisions.

The Plan grants the Committee authority to interpret and apply the SERP provisions in the course of determining benefit eligibility and in calculating benefit amounts. AR 3326. Under

United States District Court
Northern District of California

ERISA, Gateway must process claims "solely in the interests of the [Plan's] participants and beneficiaries," like Metaxas. *Stephan*, 697 F.3d at 928–29 (citation omitted). But because Gateway "both decides who gets benefits and pays for them . . . it [also] has a direct financial incentive to deny claims." *Id.* (citation omitted). Gateway's dual role as a plan administrator authorized to determine the amount of benefits owed, and as insurer responsible for paying such benefits, creates a structural conflict of interest. *Id.*

The existence of a conflict of interest must be considered in determining whether the Committees abused their discretion. *Id.* "[T]he existence of a conflict of interest is a factor to be considered in determining whether a plan administrator has abused its discretion. The weight of this factor depends upon the likelihood that the conflict impacted the administrator's decisionmaking." *Id.* at 929; *see also Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 707 (9th Cir. 2012) (abuse of discretion review "is tempered by skepticism when the plan administrator has a conflict of interest in deciding whether to grant or deny benefits"); *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 681 (9th Cir. 2011) ("Our skepticism of [the plan administrator's] approach is heightened because of its conflicts of interest. Where the plan administrator has a conflict of interests, review for abuse of discretion is not as deferential as abuse of discretion review of district court or administrative agency decisions.").

In *Harlick*, the Ninth Circuit applied only "some skepticism" because "the record before [it] does not indicate whether [the insurance company] has a history of bias in claims administration or whether it has taken any steps to promote accurate decision-making." *Harlick*, 686 F.3d at 707–08; *see also Wakamatsu v. Oliver*, 570 F. App'x 708, 709 (9th Cir. 2014) (mem.) (applying only "slight additional skepticism" where plan administrator's alleged conflicts of interest were "either nonexistent or minor"). Metaxas alleges a "structural conflict of interest" against Metaxas, but the record before the Court does not indicate that the conflict of interest played a role in the Committees' decisionmaking. Plaintiff's SJ Motion (Dkt. 158) at 29–32. Metaxas does not point to a history of biased claims administration, the Committees appear to have granted every one of Metaxas's requests to submit evidence to supplement the record and to facilitate their decisionmaking, and the Committees ultimately determined that Metaxas is eligible

for benefits under the SERP.  AR 4848; AR 5210–11.

Accordingly, the Court applies "some skepticism" in evaluating the Committees' decisions.  *See Harlick*, 686 F.3d at 707; *Cromwell v. Kaiser Found. Health Plan*, No. 18-cv-06187-EMC, 2019 WL 4601527, at *5 (N.D. Cal. Sept. 23, 2019) (applying "some skepticism" to abuse of discretion review where no evidence of history of biased decisionmaking).  Practically, to determine whether "bias infiltrated the entire decisionmaking process" as a result of the conflict of interest, the Court more closely scrutinizes whether the Committees' decisionmaking is reasoned and consistent, whether the Committees appropriately considered the material evidence and drew logical and supported inferences therefrom, and whether the record reflects any procedural irregularities.  *Stephan*, 697 F.3d at 934; *see also Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 902–07 (9th Cir. 2016); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 972–74 (9th Cir. 2006).

## IV.    <u>DISCUSSION</u>

The dispute before the Court is whether Gateway was required to treat premium payments made under the BOLI policy as deferred income which should be included in Metaxas's "salary rate" under the SERP.

Although the dispute concerns the meaning and application of the SERP's term "salary rate," the Court's task on these cross-motions is not to calculate the correct salary rate in the first instance or to decide which of the two competing calculations is more persuasive.  The SERP grants the Committee discretionary authority, and the Court defers to the Committee's interpretation of the Plan's terms unless it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record."  *Stephan*, 697 F.3d at 928–29.  The Court applies that standard with the degree of skepticism discussed above — scrutinizing whether the Committees' reasoning is consistent and grounded in the administrative record, and whether the Committees appropriately engaged with the evidence Metaxas submitted.  *See Salomaa*, 642 F.3d at 676; *Abatie*, 458 F.3d at 972–73.

Under this framework, the Court concludes that the Committees' determination did not constitute an abuse of discretion.  The Committees grounded their interpretation of "salary rate" in

United States District Court
Northern District of California

8

the SERP's plain language, contemporaneous compensation records, and Gateway's payroll and tax documentation — none of which reflect an agreement to treat BOLI premium payments as deferred salary owed to Metaxas. Metaxas's contrary reading depends on inferential leaps and assumptions unmoored from the SERP's own terms and the administrative record. Even applying some skepticism and closer scrutiny in light of Gateway's structural conflict of interest, the Committees' reasoning was neither illogical nor implausible, and it is supported by inferences fairly drawn from the administrative record. *Stephan*, 697 F.3d at 928–29. Indeed, even if reviewed *de novo*, the Court concludes that the Committee's construction of the SERP is the only reasonable interpretation available.

Accordingly, the Court **GRANTS** Gateway's motion for summary judgment and **DENIES** Metaxas's motion.

A.    The Committees' Decisions Were Not an Abuse of Discretion

On the record presented, the Court finds that the Committees did not abuse their discretion in calculating Metaxas's post-employment benefit under the SERP.

The Initial Claim Committee's unanimous written decision emphasized that Gateway paid the BOLI premiums into a Gateway-owned life insurance policy, that Metaxas had no right to receive those payments or any cash value from the policy while alive, and that the premiums were not reported as salary to Metaxas on any Gateway records. AR 4854–56. The Initial Claim Committee grounded its determination in contemporaneous records reflecting Metaxas's compensation structure in 2004–2005. Those materials consistently identified Metaxas's base salary as $330,000, with potential bonus payments, but contain no reference to an annual deferral of $290,449.51 or any indication that the parties were to treat BOLI premiums as deferred salary. *See* AR 4847–73. The Committee also relied on Gateway's payroll and tax reporting records, which do not reflect the alleged deferred income. *See id.* Under the SERP's definition, deferred salary must arise from an arrangement by which the participant elects to defer the receipt of income otherwise payable. AR 5104 (SERP § 2.16). The absence of any contemporaneous documentation reflecting such an election supports the Committee's conclusion that no qualifying deferral existed. The Committees considered Metaxas's submissions and arguments, evaluated

9

her accounting theory carefully, and concluded that the materials relied upon demonstrated, at most, Gateway's internal funding obligations rather than deferred compensation owed to Metaxas.

A central premise of the Committees' reasoning was that Gateway's payment of BOLI premiums merely represented an *employer-owned* funding mechanism rather than salary payable to Metaxas. The administrative record supports that conclusion. The BOLI policy was owned exclusively by Gateway. It was purchased by Gateway as an investment to fund its SERP obligations. It was not itself a SERP benefit to which Metaxas had any right any more than any other asset or form of investment made by Gateway to fund its future obligations. Indeed, under express provisions of the SERP, Metaxas possessed no ownership interest, right to policy proceeds, or entitlement to cash value. AR 5106 (SERP § 4.1); AR 5109 (SERP § 10.2); AR 5112 (Split Dollar Endorsement). The SERP expressly disclaims any participant interest in employer assets used to fund SERP obligations. *See* AR 5109 (SERP § 10.2). Relying in part on these provisions, the Committee concluded that Gateway's premium payments could not reasonably be characterized as salary deferred pursuant to an agreement between Metaxas and Gateway. That determination reflects a straightforward application of the SERP language to undisputed facts. It was neither implausible nor unsupported by the administrative record.

On appeal, the Appeals Committee adopted the Initial Claim Committee's reasoning after reviewing the record and Metaxas's objections. AR 5209–19. The Appeals Committee reiterated that, although SERP benefits may form part of Metaxas's overall compensation package, the SERP required calculation of benefits based specifically on the SERP's definition of salary rate and that the evidence did not establish that BOLI premiums were part of the "salary rate" within the SERP's defined terminology. AR 5217. The existence of reasoned appellate review within the SERP's administrative structure further supports the conclusion that the final determination resulted from deliberative decisionmaking rather than arbitrary action.

Finally, the Court has considered Gateway's structural conflict of interest and applies some skepticism to its findings and reasoning. But nothing in the administrative record suggests that the potential conflict infected the Committees' procedures or analysis. To the contrary, the record reflects that the Committee permitted Metaxas to supplement the administrative record, considered

10

Metaxas's submissions carefully, and ultimately awarded termination benefits — though not in the amount that Metaxas wished.  The Committees grounded their interpretation of "salary rate" in the SERP's plain language and contemporaneous records, none of which reflect an agreement to treat BOLI premium payments as deferred salary owed to Metaxas.  The Committees' reasoning was consistent, they engaged with Metaxas's evidence and arguments in detail, and they articulated a rational explanation for excluding the BOLI premium payments from her "salary rate."  In fact, even if the Court were not to defer to the Committees' decisionmaking at all, the Court finds the Committees' interpretation logical, supported by the record and convincing and would adopt it on de novo review.  *Stephan*, 697 F.3d at 928–29.

Accordingly, the Committees' post-remand calculation of Metaxas's termination benefit does not constitute an abuse of discretion.  It was eminently reasonable.

B.      Metaxas's Contrary Arguments Do Not Undermine the Committees' Determination

As noted above, Metaxas maintains that $290,449.51 in BOLI premiums were a form of deferred compensation and should be factored into the total "salary rate" calculation.  Metaxas's proposed "salary rate" is made up of $330,000 base salary plus $290,449.51 in BOLI premium payments, totaling $620,449.51 annual salary rate.  Applying the SERP's formula for calculating monthly SERP benefits, this salary rate results in a monthly SERP benefit of $19,626.16.[2]  AR 4869, 5217.  Without explanation, Metaxas's opposition brief to the court attaches another calculation statement with a total SERP monthly benefit of $31,842.30 — nearly double the calculation she submitted to the Committees and in her summary judgment motion to the Court.  *See* Plaintiff's Opposition Brief, Ex. 1.  For the purpose of resolving this dispute, the precise total Metaxas seeks does not matter, because her underlying methodologies suffer from the same deficiencies.

To reiterate, SERP defines "salary allowance" as: "The Participant's salary rate (calculated before reduction for any taxes due or for amounts deferred *pursuant to any deferral arrangement*

---

[2] Metaxas's calculations submitted to the Initial Claim Committee represented $19,319.50 in monthly SERP benefits.  But her calculations submitted to the Appeals Committee and now the Court represent $19,626.16 in monthly SERP benefits.  Metaxas does not explain this discrepancy.

*by which the Participant can defer the current receipt of income*).” AR 5104 (SERP § 2.16) (emphasis added).  Metaxas's approach assumes that Gateway's BOLI premium payments constitute income to which she was entitled but was deferred pursuant to a deferral arrangement. But Metaxas identifies no concrete evidence in the administrative record either establishing her entitlement to the premium payments as income or that the parties understood the BOLI premium payments to be deferred income to which she was entitled.

Metaxas's pivotal factual premise is that in late 2004, she accepted a Board-approved salary raise of $290,449.51 annually but agreed not to receive it directly.  *See* Plaintiff's SJ Motion at 9.  Instead, Gateway would use that amount for seven years to pay premiums on the BOLI policy.  *Id.*  The Committee, however, found that contemporaneous compensation agreements provided for a $330,000 base salary and bonuses and did not include any additional salary or deferred compensation in the amount of $290,449.51.  AR 4854.  Nothing in the record supports Metaxas's claim that there was an agreement to give her a raise in salary of $290,449.51 in addition to her $330,000 base salary.  Nor is there anything in the record supporting her contention that the parties agreed to take that $290,449.51 and defer it by placing it in a life insurance policy for her benefit.  Instead, the record unequivocally establishes that the BOLI was a *Gateway-owned and controlled* asset;  nothing in the record suggests Gateway was required to continue paying the BOLI premiums or that it was prohibited from using alternative funding streams.  *See* Hearing Transcript, January 22, 2026 at 18:24–19:22 (stating that Gateway could cease BOLI premium payments “at any point in time,” that Gateway was under “no obligation” to pay the BOLI premiums, and that Gateway “could have let the policy lapse or . . . traded it in for the cash surrender value at any point in time”).  And the SERP makes clear that Metaxas had no entitlement to the policy.  AR 5106, 5019 (SERP §§ 4.1, 10.2).  Under these circumstances, she cannot reasonably assert that the premiums paid to the policy constituted deferred salary.

The primary evidence Metaxas asserts to establish there was an agreement to treat the premium payments as deferred salary rests on Gateway's own internal accounting records.  She begins by asserting a salary rate of $620,449.51, and applies the SERP formula to that salary rate to yield a monthly benefit of $19,626.16.  Plaintiff's SJ Motion at 24; AR 5056–61.  Metaxas then

United States District Court
Northern District of California

relies on Gateway's internal "SERP Liability" account ledgers (Account No. 2405-51) to corroborate that purported benefit figure. *Id.* As of March 31, 2010, that account carried a balance of $1,236,448.04. *Id.* Metaxas characterizes the account as a reserve "created to aggregate the amounts the Bank had recognized as necessary to cover its obligations to Ms. Metaxas." Plaintiff's SJ Motion at 23. From that figure, Metaxas employs what she calls "reverse engineering" by dividing the $1,236,448.04 balance by the 63 months of her participation (January 2005 through March 2010), to come to a monthly benefit of $19,626.16. *Id.* Metaxas contends that this figure represents Gateway's own acknowledgement of its accrued obligation to Metaxas under the SERP. Plaintiff's SJ Motion at 24. According to Metaxas, the reverse engineering methodology confirms the reliability of her benefit calculation and acts as Gateway's own acknowledgement of the SERP obligation owed to Metaxas which includes the $290,449.51 in deferred salary.

The Court finds Metaxas's methodology unpersuasive, and the Committees' rejection of it was not an abuse of discretion. Metaxas's "reverse engineering" of the "SERP Liability" account ledger makes no sense. Metaxas does not explain what that account figure represents or how it was calculated by Gateway. If, as its name suggests, it is the total SERP liability which would be owed to Metaxas based on the retirement benefits she had accrued when she left her employment, that does not come close to aligning with her claim of a monthly benefit of $19,626.16 (based on inclusion of the premium payments as deferred salary and taking 63 out of 100 months' accrual). Under Section 5.4 of the SERP, she is entitled to 180 months of payment. Disregarding present value, the benefits owed would be $19,626.16 x 180 months = $3,532,708.80, not $1,236,448.04. If, instead, one took the Committee's calculated monthly benefit of $9,252.95, the total with 180 monthly payments would be $1,665,531, far closer to the $1,236,448.04 SERP liability account ledger figure. Indeed, taking a present discount value adjustment would bring the figure even closer to the monthly benefit level found by the Committee.[3]

---

[3] Given an income stream of 180 monthly payments of $9,252.95, the present discounted value at a 2.5% discount rate is estimated as $1,149,991.79. Applying the same methodology to a monthly payment of $19,626.16 at a 2.5% discount rate yields a present value of approximately $2,439,213.75 — a figure substantially exceeding the $1,236,448.04 SERP liability as reported in

Metaxas's reverse engineering is flawed in other ways too. It conflates the monthly *accrual* amount with the monthly *benefit* amount. The SERP was designed to pay benefits over the course of 180 months. AR 5106 (SERP § 5.4). The accrual period, by contrast, was only 63 months out of a possible 100 months under the SERP. Because Gateway was accumulating a liability over a shorter period than the 180-month benefit payout period, the monthly accrual amount is necessarily higher than the monthly benefit amount. Yet, Metaxas treats the two as equivalent and arrives at a significantly inflated benefit amount. And Metaxas's proffered benefit calculations are internally inconsistent, ranging anywhere from $18,277.43 to $30,186.72 across multiple submissions to the Committees and the Court. AR 4867–70; Plaintiff's Opposition Brief, Ex. 1.

Metaxas's reverse engineering argument therefore carries minimal, if any, probative value and does not create a genuine dispute of material fact, particularly in view of the undisputed record evidence that Metaxas's salary was $330,000 and that there was nothing to suggest that Gateway's payment of premiums on the life insurance policy — a policy it owned and controlled and to which Metaxas had no entitlement — constituted deferred salary.

Next, Metaxas invokes numerous regulatory guidance documents that do not resolve the interpretive question presented here. Metaxas argues that the SERP must be interpreted consistently with 26 U.S.C. § 409A and its implementing regulations; but the statute and regulations "use the broader term 'compensation'" instead of "salary." Plaintiff's SJ Motion at 21. Similarly, Metaxas points to 26 U.S.C. § 3401(a), which defines "wages" as "all remuneration . . . for services performed by an employee for his employer, including the cash value of all remuneration . . . paid in any medium other than cash, unless specifically excluded." *Id.* But neither "wages" nor "compensation" is the operative term here. The SERP uses the term "salary rate," a term that Metaxas concedes none of the cited authorities define. Plaintiff's Opposition Brief at 17. Courts interpreting ERISA plan terms give those terms their ordinary meaning "as would a [person] of average intelligence and experience." *Richardson v. Pension Plan of*

---

Gateway's internal accounting records. These calculations employ the formula: Present Value = Future Value / $(1 + 0.025)^{15}$.

*Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997) (brackets in original).  Regulatory definitions of "compensation" or "wages" are unmoored from the particular  definition of "salary rate" under the SERP.  The Court notes, in any event, Section 3401's definition of "wages" even if applicable, would be of little help to Metaxas.  To be included as "wages," the BOLI premium payments would have to constitute "remuneration."  But since Metaxas was not entitled to the cash value of the BOLI (the rights thereto were held instead by Gateway), it was not "remuneration" under section 3401.

Metaxas also takes issue with the Committee's reliance on Metaxas's W-2 tax forms which reflect compensation consistent with a $330,000 salary with no additional deferral of $290,449.51. Plaintiff's Opposition Brief at 8.  Metaxas argues that the absence of the allegedly deferred salary from these forms is unsurprising, because deferred compensation by its nature is not reported as current income.  *Id.*  That point, taken by itself, is logical.  But it cuts in both directions in this context.  The tax forms' silence on the $290,449.51 does not conclusively disprove the existence of a deferral arrangement, nor does it support Metaxas's affirmative claim that such an arrangement existed.  The W-2 argument, instead, leaves Metaxas where she started — without any documentary evidence of a deferral arrangement.

In light of the absence of any real evidence of a deferral arrangement between Metaxas and Gateway, Metaxas relies on the existence of a supposed "Evergreen Authorization" agreement, which she describes as an informed consent form that authorized "Gateway to withhold from [Metaxas's] base salary the amount necessary to pay for the life insurance premiums that were informally funding [Metaxas's] SERP benefits."  AR 4971.  Metaxas maintains that the "Evergreen Authorization" exists and is "kept in a folder labeled 'SERP' . . . and was kept in the locked grey metal cabinets of Building One at 2306 Merced Street, San Leandro, California."  AR 4965–66.  But Metaxas has not produced any evidence of such an authorization form, and Gateway has not produced such a document despite its representation to the Court that it has produced "all pertinent documents."  *See* Order Granting Motion to Dismiss (Dkt. 143) at 18.  Nor has Metaxas ever moved to compel production of this supposed document.  The Court need not find a genuine issue of fact where a declaration is comprised merely of self-serving hearsay, is

15

"uncorroborated and self-serving," or includes only "bald, uncorroborated, and conclusory assertions rather than evidence." *F.T.C. v. Neovi, Inc.*, 604 F.3d 1150, 1159 (9th Cir. 2010); *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497 (9th Cir. 2015). Accordingly, the Court affords minimal weight to this argument.

As a final matter, the Court **GRANTS** Metaxas's pending motion to submit additional materials for consideration. Administrative Motion for Relief (Dkt. 173). The additional submissions do not alter the Court's analysis, however, because they do not remedy the issues identified above or otherwise affect the abuse of discretion determination.

For the foregoing reasons, Metaxas has not shown that the SERP compels the inclusion of the BOLI premium payments as part of her "salary rate," or that the Committee's contrary determination constituted an abuse of discretion. Indeed, even if the matter were considered de novo, the Court finds the Committees' interpretation and application of the SERP was correct. Accordingly, the Court **DENIES** Metaxas's motion for summary judgment and **GRANTS** Gateway's motion for summary judgment.

C.    Post Hoc Rationales

Metaxas devotes substantial attention to the argument that Gateway relied on impermissible, post hoc rationales to defend the Committee's calculation. Plaintiff's Opposition Brief at 2–3. It is correct that an administrator may not "sandbag[]" a claimant by advancing a new basis for denial during litigation that was not articulated in the administrative decision. *Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Protection Plan*, 349 F.3d 1098, 1104 (9th Cir. 2003). The Court therefore evaluated the Committees' decisions based on the reasoning expressed in the administrative record, rather than any new grounds offered for the first time in briefing.

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Gateway's cross-motion for summary judgment and **DENIES** Metaxas's cross-motion for summary judgment.

///

///

16

**IT IS SO ORDERED**.

Dated: March 10, 2026

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California

17